William R. BACHMAN, Plaintiff–
Appellant,

v.

BEAR, STEARNS & COMPANY,
INC., Defendant–Appellee.

No. 98–2396.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1999.

Decided May 26, 1999.

Michael P. Mullen (argued), Mullen & Foster, Chicago, IL, for Plaintiff–Appellant.

Roger L. Taylor, Martin T. Tully (argued), Kirkland & Ellis, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and BAUER and FLAUM, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Bachman, brought this suit against the investment company Bear Stearns, charging violations of the RICO statute, 18 U.S.C. §§ 1961 *et seq.* The district court dismissed the suit for failure to state a claim, and so we treat as true the facts alleged in the complaint, though of course without vouching for their truth. According to these allegations, Bachman was a vice president of Calumet Coach Corp. (Coach), a medical imaging company owned by Calumet Acquisitions Corp., and he was also, along with other managers, a shareholder of Calumet (the parent). The majority shareholder in Calumet was Merrill Lynch Interfunding, Inc. (MLIF), and it agreed with Bachman that if he left Coach's employ, other shareholders, including MLIF, Calumet, and Daniel Snyder—the CEO of both Calumet and Coach—would be entitled to buy out his stock at a fair market value to be determined by one of several firms that the agreement designated as "selectable" by MLIF to value Calumet. Bear Stearns was one of those firms.

Beginning in 1988, Snyder and John Ferrell, a vice president of MLIF and director of Calumet, defrauded Bachman of money due him as an employee and shareholder. They fired him in 1990, hired Bear Stearns in November of that year to determine the fair market value of Calumet and hence of Bachman's stock, and directed Bear Stearns to undervalue Calumet. Bear Stearns issued a fraudu-lent valuation in January 1991 and a revised valuation, also fraudulent, in December of that year. It then assisted the defendants in a suit that Bachman brought in an Illinois state court in 1990 against the two Calumet corporations, Snyder, and Ferrell (a suit that resulted in a $3.5 million judgment in favor of Bachman in 1995) by concealing evidence and presenting perjured testimony. Bear Stearns was not a party to that suit, and no argument has been made that the judgment in that suit has any preclusive effect on the present suit, which is against Bear Stearns alone.

Bachman charges in the present suit that Bear Stearns made 66 mail or wire communications in furtherance of the scheme to defraud him; violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, are within the definition of "racketeering activity" in the RICO statute. 18 U.S.C. § 1961(1)(B). He argues that Bear Stearns violated the statute by participating, "through a pattern of racketeering" consisting of the fraudulent mail and wire communications, in the conduct of the affairs of an "enterprise" constituted by the alliance among the two Calumet corporations, MLIF, MLIF's parent Merrill Lynch, Pierce, Fenner & Smith, Inc., Snyder, Ferrell, and Bear Stearns, § 1962(c), and also that Bear Stearns, in violation of § 1962(d), conspired with the other members of the enterprise to violate subsection (c).

▪ The suit fails at the "enterprise" stage. This is not because there is no formal organization denoted "The Partnership of the Calumet Corporations, MLIF, Merrill Lynch, Pierce, Fenner & Smith, Inc., Snyder, Ferrell, and Bear Stearns to Fleece William Bachman." The RICO statute reaches informal as well as formal organizations. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Rogers,* 89 F.3d 1326, 1337 (7th Cir.1996); *Burdett v. Miller,* 957 F.2d 1375, 1379 (7th Cir.1992); *United States v. Owens,* 167

F.3d 739, 751 (1st Cir.1999). Indeed, a prototypical RICO enterprise is a criminal gang not incorporated under the laws of any state or compliant with the provisions of the Uniform Partnership Act. But we do not see how the acts complained of in this case can be thought the work of an organization, however loose-knit.

 Snyder, as CEO of Bachman's employer, and Ferrell, representing the employer's controlling shareholder, are alleged to have got together with Bear Stearns to defraud an employee-shareholder. That is a conspiracy, but it is not an enterprise unless every conspiracy is also an enterprise for RICO purposes, which the case law denies. E.g., *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir.1997); *Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir.1990); *United States v. Neapolitan*, 791 F.2d 489, 499–500 (7th Cir.1986); *United States v. Richardson*, 167 F.3d 621, 625 (D.C.Cir.1999). It is no more an enterprise than if Snyder and Ferrell, while walking together one day, had a sudden impulse to rob a passerby, and did so, and when caught minutes later by a policeman bribed him to let them go. Cf. *Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir.1990); *Medical Emergency Service Associates, S.C. v. Foulke*, 844 F.2d 391, 398 (7th Cir.1988); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134–35 (6th Cir.1994). The concerted activity of Snyder, Ferrell, and Bear Stearns lasted years rather than minutes, and one indication of an organization is duration. *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 780–81 (7th Cir.1994); *Miller v. Gain Financial, Inc.*, 995 F.2d 706, 709 (7th Cir.1993); *Tabas v. Tabas*, 47 F.3d 1280, 1294–95 (3d Cir.1995) (en banc); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543–44 (10th Cir.1993). But the duration here was a function not of there being an organization able to hold itself together through time, but merely of the nature of the fraud, which involved the manipulation of contractual rights, and of the fact that the victim brought a lawsuit.

If Snyder, Ferrell, and Company are a RICO organization, then every conspiracy to commit fraud is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation. That is not the law. *Fitzgerald v. Chrysler Corp., supra,* 116 F.3d at 226; *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 523 (7th Cir.1995); *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986); *Terry A. Lambert Plumbing, Inc. v. Western Security Bank,* 934 F.2d 976, 981 (8th Cir. 1991); *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 685 (4th Cir.1989).

 We have described the alleged RICO enterprise as Snyder, Ferrell, and Bear Stearns, thus leaving out the four corporations. This was deliberate. A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself. *Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1324–25 (7th Cir.1998); *Fitzgerald v. Chrysler Corp., supra,* 116 F.3d at 226; *Brannon v. Boatmen's First National Bank,* 153 F.3d 1144, 1147–49 (10th Cir. 1998); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir. 1995). To add the corporations to Snyder and Ferrell, their employees, is thus to add nothing.

 Each of the four corporations is an enterprise, however, and Bear Stearns is not their employee. But Bear Stearns cannot be thought to have been conducting, or to have agreed to conduct, the affairs of any of these corporations through a pattern of racketeering activity. That would require Bear Stearns to have exercised (or agreed to exercise, in order to be liable as a RICO conspirator) at least some measure of control over the corporations. *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 727 (7th Cir.1998); *Baumer v. Pachl,* 8 F.3d 1341, 1344–45 (9th Cir. 1993); *Stone v. Kirk,* 8 F.3d 1079, 1092 (6th Cir.1993); *University of Maryland v.*

*Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993). It did not. It was merely a hireling, as is shown by the fact that the only fee it received was its normal fee for determining a client's fair market value.

AFFIRMED.