In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3938

Edward Stachon and Judy Stachon,

Plaintiffs-Appellants,

v.

United Consumers Club, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7020--Charles R. Norgle, Sr., Judge.

Argued April 18, 2000--Decided October 6, 2000

Before Flaum, Chief Judge, and Ripple and Williams,
Circuit Judges.

Williams, Circuit Judge. Plaintiffs-Appellants
Edward Stachon and Judy Stachon, on behalf of
themselves and a putative class of individuals
similarly situated, filed an Amended Class Action
Complaint charging Defendants-Appellees, United
Consumers Club, Inc. ("UCC"), and five of its
officers and/or directors, with violations of the
Racketeer Influenced and Corrupt Organizations
Act ("RICO"), 18 U.S.C. sec.sec. 1961 et seq.,
and the Illinois Consumer Fraud and Deceptive
Trade Practices Act, 815 Ill. Comp. Stat. 505/2.
Defendants-Appellees moved to dismiss the amended
complaint and the district court granted the
motion under Fed. R. Civ. P. 12(b)(6) for failure
to state a claim under RICO. After doing so, the
district court declined to maintain supplemental
jurisdiction over Appellants' state law claim and
dismissed the action. We affirm.

I

UCC, founded in 1978, is a "buying club," which
enters into agreements with manufacturers to sell
"first quality" merchandise to members at special
wholesale prices. Consumers join UCC by paying a
membership fee, which entitles them to purchase
merchandise from more than 700 brand name
manufacturers through UCC catalogues. UCC members
are purportedly able to obtain significant

savings on merchandise because of their collective "buying power" in the UCC buying system, which "eliminates the middleman and overhead costs associated with conventional retail, wholesale and discount houses."

The gist of Appellants' RICO claim is that Appellees have fraudulently represented that UCC members have access to first quality merchandise at special wholesale prices. Appellants aver that much of the merchandise ordered by UCC members is of an inferior quality and is sold at higher than wholesale prices. They further claim that Appellees have misrepresented the buying power of UCC by overstating its membership. According to Appellants, they and other UCC members relied on the false representations made by Appellees in joining UCC.

Appellants maintain that in furtherance of a scheme to defraud consumers about the benefits of UCC memberships, Appellees conducted and conspired to conduct or participate in a pattern of mail and wire fraud activity through an enterprise made up of "Defendants, past and present UCC franchisees, manufacturers and wholesalers, and UCC members," in violation of RICO. See 18 U.S.C. sec. 1962(c), (d)./1 The district court ruled that Appellants failed to plead the existence of the requisite RICO "enterprise" and dismissed the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Appellants now challenge the district court's decision dismissing their RICO claim.

II

We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) de novo, accepting the well-pleaded allegations in the amended complaint as true and drawing all reasonable inferences in favor of the plaintiffs, here, the Appellants. See Biblia Abierta v. Banks, 129 F.3d 899, 902-903 (7th Cir. 1997). We have previously declared that "a RICO complaint must identify the enterprise." Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995). Appellants allege an "association in fact" enterprise made up of UCC, its franchisees, its officers and/or directors, its members, participating wholesalers, and participating manufacturers. Appellees contend that Appellants have not adequately alleged the existence of a RICO enterprise.

RICO defines an "association in fact" enterprise as a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. sec. 1961(4). While a RICO enterprise can be formal or

informal, some type of organizational structure is required. See Richmond, 52 F.3d at 645; Bachman v. Bears, Stearns & Co., 178 F.3d 930, 931 (7th Cir. 1999). A RICO enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted); see United States v. Turkette, 452 U.S. 576, 583 (1981) (describing a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct" and indicating that an enterprise is shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit"). Moreover, because a RICO enterprise is "more than a group of people who get together to commit a 'pattern of racketeering activity,'" Richmond, 52 F.3d at 645 (internal quotation and citation omitted); see Bachman, 178 F.3d at 932, there must be "an organization with a structure and goals separate from the predicate acts themselves." United States v. Masters, 924 F.2d 1362, 1367 (7th Cir. 1991).

In Richmond, supra, the court dismissed a RICO action naming a string of entities, known and unknown, as the RICO enterprise because "a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense."/2 52 F.3d at 645. Notably, the alleged RICO enterprise in Richmond provided no sign of "structure, continuity and common course of conduct," so the court dismissed the action. Id. at 645-46. More recently in Bachman, supra, we dismissed another RICO action because the plaintiff inadequately alleged a RICO enterprise. There, a group of unrelated individuals and corporations supposedly got together to defraud the plaintiff, and the court found that the plaintiff's substantive fraud allegations merely established a conspiracy, not a RICO "organization" (or enterprise).

In light of Richmond and Bachman, we cannot accept Appellants' vague allegations of a RICO enterprise made up of a string of participants, known and unknown, lacking any distinct existence and structure. While Appellants had ample opportunity to adequately allege a RICO enterprise, they fail to show that the acts complained of in this case were the "work of an organization, however loose-knit." Bachman, 178 F.3d at 932. When we liberally construe the allegations in the amended complaint, the most Appellants may be able to establish is a pattern of racketeering activity through the purported

scheme to defraud consumers. To withstand Appellees' motion to dismiss, however, Appellants must present something more than this and assertions of conspiracy; otherwise, "every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation."/3 Bachman, 178 F.3d at 932. From Bachman, we know that is not the law.

Appellants argue that the alleged enterprise has a distinct structure in that UCC's "franchisees recruit members to purchase merchandise at special prices from certain wholesalers and suppliers." This argument is undercut by Appellants' own acknowledgment that UCC's franchisees act under the "strict direction" of Appellees. Appellants submit that Appellees provide UCC's franchisees with pre-written sales scripts from which to recruit members. These sales scripts presumably contain false representations about UCC membership, which necessarily sustains the alleged pattern of racketeering activity.

This court has repeatedly stated that RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does. See Jennings, 910 F.2d at 1440 ("[A]lthough a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does."). Appellants essentially do this in failing to offer the slightest sign of a "command structure" separate and distinct from UCC (which is not the purported enterprise). Id. at 1440 n.14. Here, the mere fact that UCC, for nearly 21 years, had business dealings with a wide assortment of unnamed manufacturers, wholesalers, and members in no way establishes that they function with UCC as a continuing unit or as an ongoing structured organization. Aside from naming a string of participants, the amended complaint offers no intelligible clue as to the scope and duration of the enterprise itself; the duration here presumably is a function of UCC's existence, but that is insufficient because UCC is not the enterprise. In any event, Appellants offer nothing to show that this group of participants ever functioned as an ongoing RICO organization. As a consequence, the RICO claim is worthy of dismissal, notwithstanding whether the participants had a common purpose./4

Accordingly, Appellants' RICO claim under section 1962(c) cannot survive Appellees' motion to dismiss. Since Appellants fail to establish a violation of section 1962(c), their section

1962(d) claim based on the same facts must fail as well. See Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1026 (7th Cir. 1992).


III

Because we agree with the district court that Appellants did not adequately allege a RICO "enterprise," we AFFIRM.


/1 Section 1962(c) provides in pertinent part:

It shall be unlawful for any persons . . . associated with any enterprise . . . the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

Section 1962(d) makes it unlawful "for any person to conspire to violate the provisions of subsection . . . (c)." With respect to a "pattern of racketeering activity," violations of the federal mail and wire fraud statutes, 18 U.S.C. sec.sec. 1341, 1343, qualify as predicate acts of racketeering under 18 U.S.C. sec. 1961(1).

/2 The court in Richmond indicated that the challenged complaint "lists the three defendants as part of 'Nationwide Group,' a group that 'includes at least' four other entities . . . and that may include other businesses, three of which are suggested and listed [in the complaint]. The second enterprise [is made up of] Nationwide Group plus unnamed car dealers." 52 F.3d at 645.

/3 We note further that the court has consistently insisted that the RICO defendant or "person" be separate and distinct from the enterprise, see Richmond, 52 F.3d at 646-67, because "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs, not just their own affairs,' through a pattern of racketeering activity." Reves v. Ernst & Young, 507 U.S. 170 (1993). In this respect, the alleged "enterprise" is in no way strengthened by including UCC with its officers and/or directors because UCC adds nothing to the enterprise. See Bachman, 178 F.3d at 932 ("A firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself"). Nor does the inclusion of "past and present [UCC] franchisees" benefit Appellants in establishing an enterprise. See Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226-28 (7th Cir. 1997) (plaintiff cannot establish RICO enterprise by adding a

corporation's franchises to the corporation); see also Richmond, 52 F.3d at 647 (following Brittingham v. Mobil Corp., 943 F.2d 297 (3d Cir. 1991)).

/4 While the RICO claim fails because the enterprise lacks the requisite structure, we nonetheless note the questionability of whether the participants shared a purpose "to provide an unparalleled opportunity for consumers to save money, save time, and ultimately improve their quality of life." There is nothing in the amended complaint suggesting that the business dealings which UCC conducted with manufacturers, wholesalers, and members promoted such a purpose; even viewing the allegations in a light most favorable to Appellants, diverse parties, such as these, customarily act for their own gain or benefit in commercial relationships. Given the commercial nature of the various parties' relationships with UCC and the independent interests necessarily governing those relationships, the amended complaint fails to dispel the notion that the different parties entered into agreements with UCC for their own gain or benefit. That this fraud action was even filed by Appellants, the supposed fraud victims, underscores, in our view, the improbability that the enterprise had a common purpose to benefit consumers (or UCC members) as a whole; indeed, it is somewhat improbable that UCC members would act in concert with Appellees (and countless unnamed entities) to perpetrate fraud on other unsuspecting consumers.