JOURNAL ENTRY and OPINION
 I. INTRODUCTION {¶ 1} This is an appeal of the trial court's decision granting appellees'[1] Civ.R. 12(B)(6) motion to dismiss appellants'[2] amended complaint that claimed damages in a broad allegation under Ohio's Pattern of Corrupt Activity Act.[3] Appellants alleged that appellees, acting as an organized corrupt entity, concealed the wrongdoing of certain priests, employees, and agents of the appellees, who sexually assaulted appellants over a sustained period of time.
 {¶ 2} The trial court failed to indicate the reason it dismissed the complaint. Appellants' brief, also, fails to advance any clear argument for us to use in reviewing the trial court's ruling; instead, they refer us to the complaint, appellees' motion to dismiss, and their brief in opposition to the motion to dismiss. Appellants argue in their brief that Bishop Quinn is the principal offender, and that he engaged in the corrupt activities of attempted obstruction of justice, attempted tampering with evidence, intimidation, intimidation of a victim/witness, and attempted extortion.[4]
 {¶ 3} Appellants assign the following error for our review:
"I. The trial court erred in dismissing plaintiff's [sic] [amended] complaint with prejudice."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 II. FACTS {¶ 5} Appellants filed an amended complaint in excess of 100 pages, in which they set forth three counts. In count one, appellants alleged that the appellees engaged in a pattern of corrupt activity in violation of the OPCA, R.C. 2923.32(A)(1) only.
 {¶ 6} The appellants alleged that the Roman Catholic Church (not a named defendant-appellee), the Catholic Diocese of Cleveland, Bishop Pilla, Bishop Quinn, and their associates, operated to conceal and coverup incidents of child sex abuse within their ranks. The appellants further alleged that the operation concealed the abuse in an effort to protect the reputation and resources of the Roman Catholic Church and appellees, and that the procedures used to deal with the allegations of child sex abuse developed into a cover-up process.
 {¶ 7} To solidify these allegations of corrupt activities (attempted intimidation, attempted extortion, attempted obstruction of justice, and attempted tampering) and the cover-up, the following incidents are set forth in the complaint:
(1) A 1992 meeting between Father Donald Cozzens (not a defendant) with an unidentified woman (not a plaintiff) at which Father Cozzens, though not an attorney, purportedly "falsely" told the unidentified woman alleging abuse that "her statute of limitations had expired" and that, "if she sued the Diocese, she could be sued for slander.[5]
(2) In 1990, Bishop Quinn gave a speech at a Midwest Canon Law Society conference, in which he purportedly told an audience that, "prior to the initiation of any criminal or civil court actions, they should give consideration and study to the benefit of sending dangerous information and/or records to the Apostolic Delegate in Washington D.C. * * *."[6]
(3) Statements by Bishop Quinn, during a 1998 meeting with Appellant Constantino, regarding her alleged sexual abuse by a priest in 1962 and 1963. According to the Amended Complaint, Ms. Constantino, who had repressed her memory of the abuse until 1995, provided Bishop Quinn with a "list of all of her memories to-date" at that meeting; however, she was "unsure of the actual identity of her abuser" and identified the "wrong priest." It is alleged that Bishop Quinn told her that if she went public with these allegations, she could lose her job as a public school teacher.[7]
(4) In 2002, Appellees the Diocese, Bishop Pilla and Bishop Quinn, purportedly initially omitted the list of memories of abuse that Appellant Constantino had given Quinn during the 1998 meeting, as well as notes that Quinn allegedly had taken during that meeting, from documents produced to the Cuyahoga County Prosecutor's Office in response to a subpoena.[8]
 {¶ 8} Count two of the amended complaint alleged a conspiracy to violate the OPCA, and count three sought to enjoin the Cuyahoga County Prosecutor's office. For purposes of this appeal, we address only counts one and two.
 {¶ 9} In doing so, we agree with appellees that the trial court properly dismissed St. Angela Merici because the only allegations against it were those made by John Kotula and his mother, whose claims were voluntarily dismissed. In fact, the appellants acknowledge in their brief that the Kotula case is not the subject of this appeal.[9]
 {¶ 10} We also agree with the appellees that the trial court properly dismissed the prosecutor's office because the court lacked jurisdiction over the prosecutor who was not a named defendant in the complaint. In any event, the appellants do not raise any claims as to this count.
 {¶ 11} In their brief, appellants set forth extraordinary sexual abuses allegedly suffered individually by the appellants at the hands of certain priests and employees of the Cleveland Catholic Diocese. Appellants' individual allegations are summarized as follows:
Jamie Herakovic, now a 27 year old woman, spent part of 1995 at Parmadale, a home for troubled teens owned and operated by the Diocese of Cleveland. While at Parmadale, Jamie Herakovic alleges she was sexually assaulted by a childcare worker employed there, John Johnston.[10]
Patrick Kadlec, a 46 year old male, alleges he was repeatedly raped and sexually assaulted by Father Joseph Ehrbar. These sexual abuses occurred when he was between the ages of 7 and 14. The rapes occurred while Kadlec's family vacationed near Father Erhbar's home on Kelley's Island.[11]
Lorraine Constantino, a 48 year old woman, alleges she was repeatedly raped by Father William Koehl when she was between the ages of 7 and 8. The rapes occurred at St. Mary Magdalene School in Lake County.[12]
Sharon Falotico passed away during the pendency of this lawsuit and is represented by her Estate. She alleges she was repeatedly raped while a student at St. Mary-Painesville School. She was raped by Father Victor Paul Ortino for a period of about six months, when she was 13 years old.[13]
 {¶ 12} Appellants have framed their complaint under R.C. 2923.32(A)(1), which is substantially similar to the federal RICO Statute, 18 U.S. Section 1962(c).
 III. LAW
A. Standard of Review
 {¶ 13} Our standard of review in this appeal is de novo. "De novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision.[14] InHunt v. Marksman Prods.,[15] the court addressed the de novo review of a trial court's dismissal of a complaint for failure to state a claim, and stated as follows:
"The Ohio Supreme Court has determined that, when a trial court construes a complaint for purposes of a motion to dismiss for failure to state a claim, it must assume that `all factual allegations in the complaint are true' and it must appear beyond doubt that `the plaintiff can prove no set of facts warranting recovery.' Tulloh v. Goodyear AtomicCorp. (1992), 62 Ohio St.3d 541, 544, 584 N.E.2d 729, 732, citing O'Brienv. Univ. Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242,71 O.O.2d 223, 327 N.E.2d 753. The trial court is obligated to construe all reasonable inferences in favor of the non-moving party. Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755-756.
Since all factual allegations in the complaint are presumed true, only legal issues are presented and an entry of dismissal on the pleadings will be reviewed de novo. Plazzo v. Nationwide Mut. Ins. Co. (June 24, 1992), Summit App. No. 15370, unreported, at 3, 1992 WL 150282."[16]
 {¶ 14} In addition, the plaintiffs' complaint must state with "specificity each element of the claim in order to state a claim upon which relief can be granted."[17] The Ohio Supreme Court in Tulloh v.Goodyear Atomic Corp.[18] stated that appellate courts are to refrain from concluding that the allegations are "mere conclusions supported by no underlying facts,"[19] but must determine whether the complaint is sufficiently packed with allegations, which would give the plaintiff a basis for recovery. Accordingly, we must determine whether each element of OPCA has been sufficiently pled.
 {¶ 15} In Universal Coach, Inc. v. New York City Transit Auth.,Inc.,[20] our district was the first court in Ohio to address the application of OPCA. In Universal Coach, Inc., we pointed out that OPCA is directly adopted from the Federal Racketeer Influenced Corrupt Organizations Act, ("RICO").[21] The OPCA and the federal RICO law do have some differences; however, this in no way requires us to ignore the federal case law interpreting the federal RICO law.
 {¶ 16} In Universal Coach, Inc., we held that the failure of the plaintiff to plead with specificity the following elements are fatal to the plaintiff's OPCA claim:
"(1) that [defendant] was involved in some `corrupt activity' as defined by R.C. 2923.31(I); (2) that [defendant] was involved in a pattern of corrupt activity which consisted of two or more incidents of corrupt activity as prohibited by R.C. 2923.31(I); and (3) that an enterprise existed separate and apart from [the defendant] through which [the defendant] acted."[22]
B. The Each Element Argument
 {¶ 17} Before we address the individual elements, we are compelled to address appellees' argument that each appellant must allege each element of an OPCA claim against each appellee in order to survive a Civ.R. 12(B)(6) motion. We agree with the appellees. To rule otherwise, would make the OPCA law a conspiracy law with no defining lines among the OPCA injured victim, the OPCA corrupt person, the OPCA enterprise, the OPCA patterns of corrupt activity, and the OPCA corrupt activity.
 {¶ 18} Without these parameters, individual plaintiffs could fashion broad conspiracy claims that have the illusion of a pattern and of an enterprise, when, in fact, they have individual defendants acting in their own individual affairs and not that of an enterprise. This would nullify the mandate under OPCA that before one can claim conspiracy, one must allege with specificity an OPCA violation. Accordingly, we begin our discussion with the enterprise element.
C. Enterprise
 {¶ 19} We conclude that when plaintiffs have alleged an "association in fact enterprise", each civil OPCA lawsuit should be judged on a case-by-case basis. Here, the appellants argue that they have sufficiently pled the enterprise element because the appellees are an "association in fact". We are not persuaded.
 {¶ 20} R.C. 2923.31(C) defines an enterprise as including:
"any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises."
 {¶ 21} This definition is substantially the same as the federal RICO definition of enterprise. In fact, R.C. 2923.31(C) uses the language set forth in the United States Supreme Court's decision of United States v.Turkette, which expanded the definition of "enterprise" to include illicit as well as licit enterprises.[23]
 {¶ 22} United States v. Turkette defined an "association in fact" enterprise as an ongoing organization, formal or informal, whose members function as a continuing unit that is separate from the pattern of corrupt activity in which it engages.[24]
 {¶ 23} Courts have held that one of the following must be specifically pled to establish an "association in fact" enterprise: (1) an ongoing organization with a commonality of purpose or a guiding mechanism to direct the organization; (2) a continuing unit with an ascertainable structure; or (3) an organizational structure distinct from the pattern of predicate acts.[25]
 {¶ 24} Accordingly, we conclude in order for the appellants in this case to have sufficiently pled an enterprise, they must plead structure, continuity, and separate existence from the corrupt pattern. Appellants have failed in this regard.
 {¶ 25} We agree with appellees that the appellants have the same problem that existed in Fitzgerald v. Chrysler Corp.,[26] which was an illusion of distinctness. In Fitzgerald, the court rejected the plaintiff's allegation that the enterprise was the "Chrysler family consisting of Chrysler Corporation and its subsidiaries and dealers" because they were not distinct entities. Likewise, here, appellants have not pled the individuals separate from the enterprise.
 {¶ 26} Appellants have alleged two scenarios of which they argue we should infer the existence of the enterprise. First, they argue the Roman Catholic Church is the enterprise and the OPCA persons are the named appellees who have engaged in the common scheme of concealing the sex abuse committed by several named and unnamed priests. Second, they argue that Bishop Quinn has taken over the enterprise of the Roman Catholic Church and corrupted it with his illegal activity. These allegations do not sufficiently plead an enterprise as a separate entity from the alleged corrupt activity. Each allegation represents sameness in activity and structure.
 {¶ 27} We are not suggesting that appellants must plead some formal enterprise. Courts have held that the enterprise can be formal or informal. However, we are stating that appellants must allege in their complaint that the association in fact had a shared purpose, continuity, unity, an identifiable structure, and some goals separate from the predicate acts themselves.
 {¶ 28} Finally, we are compelled to address the Fifth District court's decision in State v. Hill,[27] because of its very broad definition of enterprise and its decision that the enterprise may be inferred from the pattern of corrupt activity because of the interdependence of the activity and the individuals involved. In doing so, we note Hill is persuasive, but not controlling authority as to this court.
 {¶ 29} In Hill, the court held that the jury's finding that a drug dealer's trafficking was part of an enterprise was supported by the evidence because cocaine is only grown in South America, where it is processed, and then brought to this country to be made into crack cocaine. Therefore, the court concluded that this supported the conspiracy claim against Hill because his drug trafficking was a part of the network to distribute cocaine.
 {¶ 30} We note, as did the court in Hill, that Hill used his business, a bar, as the location for partaking in the drug transactions. Enterprise is defined in R.C. 2923.71(C) as including a "sole proprietorship." This fact establishes the distinctness element from the corrupt activity element and would be a more appropriate basis for finding the existence of an enterprise. Nevertheless, we decline to follow Hill's broad definition of enterprise.
D. Proximate Causation
 {¶ 31} Because R.C. 2923.32(A) is patterned after the federal RICO law, we adopt the same position as that in Holmes v. Sec. Investor Prof.Corp.,[28] which requires proof of proximate cause in an OPCA claim. InHolmes, the Supreme Court set forth a detailed history regarding this component. In essence, it is the common law meaning of proximate cause. The Court stated:
"[W]e use `proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects `ideas of what justice demands, or of what is administratively possible and convenient.' W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984). Accordingly, among the many shapes this concept took at common law, see Associated GeneralContractors, supra, at 532-533, was a demand for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover. See, e.g., 1 J. Sutherland, Law of Damages 55-56 (1882)."[29]
 {¶ 32} Consequently, appellants must not only specifically plead cause in fact injury but must allege that the appellees proximately caused their injury. Appellants have failed to allege that the corrupt activity proximately caused their injury. Their injuries resulted from the abuse and not the alleged corrupt activity that occurred years later.
E. Pattern Of Corrupt Activity
 {¶ 33} Under the OPCA, two predicate or criminal acts must occur, and one must occur after the effective date of the law. The predicate acts must have occurred within six years of each other, and one of the acts must be a felony under Ohio law.[30]
 {¶ 34} R.C. 2923.31(E) makes it clear that the predicate acts must be related to the affairs of the same enterprise, not isolated, and not so closely related that they constitute a single event.
 {¶ 35} Prior to the enactment of R.C. 2923.31(E), the United States Supreme Court decided Sedima, S.P.R.L. v. Imrex Co. Inc.;[31] where it held two isolated acts do not constitute a pattern. Also, in H.J., Inc.v. Northwestern Bell Telephone Co.,[32] the Court held that the pattern must have continuity plus relationship. In this case, the issue is whether the one event with Constantino that gave rise to the alleged multiple predicate acts of Bishop Quinn constitutes a pattern for purposes of OPCA. We narrow the issue to this one event, because Constantino is the only appellant who alleged corrupt activity that was directly related to her.
 {¶ 36} The substance of appellants' amended complaint is that Bishop Quinn intimidated Constantino, failed to report the other named victims' cases, and paid out settlements through lawyers, which constituted money laundering. These events, although many in number, emanate from a single event, the alleged attempt to conceal the child sex abuse and/or the predatory priest. In H.J., the Supreme Court held that the multiple scheme was not required. However, it did not eliminate the requirement under R.C. 2923.31(E), which mandates that the events not be so close in time, place, space, action, and relationship that they constitute a single event. Here, the single event alleged by appellants is the concealment. All of the other alleged acts make up their claim for concealment. A single event cannot establish a pattern regardless of the number of criminal acts emanating therefrom.
 {¶ 37} Accordingly, we conclude appellants have failed to specifically plead a pattern. Consequently, we find it unnecessary to discuss the corrupt activity element. Also, we need not address appellants' conspiracy argument because failure to allege an OPCA violation negates the conspiracy cause of action.[33]
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and McMonagle, J., concur.
[1] The appellees are the Catholic Diocese of Cleveland, Bishop Anthony M. Pilla, Bishop A. James Quinn, Parmadale, St. Angela Merici, St. Mary Magdalene and St. Mary-Painesville.
[2] The appellants are Jamie Herakovic, Patrick Kadlec, Sharon Falotico (her estate), and Lorraine Constantino.
[3] Ohio Revised Code Sections 2923.31-36. For purposes of convenience, we will refer to this act as "OPCA."
[4] We recognize that the amended complaint and appellants' brief detail various allegations by John Kotula and his mother, Mary Santora. The docket, however, indicates that Kotula, et al. v. Catholic Diocese ofCleveland, et al., was dismissed with prejudice on February 13, 2004. Consequently, res judicata applies to any allegations as to those plaintiffs.
Additionally, we note as to the perpetrators John and Jane Doe(s) who were unidentified, the trial court dismissed these claims because "pursuant to Rule 3(A) plaintiffs have failed to commence action against John and Jane Does." The appellants have not appealed that portion of the entry.
[5] Amended Complaint at pages 56-65.
[6] Amended Complaint at pages 66-68.
[7] Amended Complaint at 51-55.
[8] Amended Complaint at 48-51.
[9] Appellate Brief at page 3.
[10] Amended complaint at pages 24-26.
[11] Amended complaint at pages 27-28.
[12] Amended complaint at pages 28-30.
[13] Amended complaint at pages 30-32.
[14] BP Communications Alaska, Inc. v. Cent. Collection Agency (2000),136 Ohio App.3d 807.
[15] (1995), 101 Ohio App.3d 760.
[16] Id. at 762.
[17] Byrd v. Faber (1991), 57 Ohio St.3d 56.
[18] (1992), 62 Ohio St.3d 541, 544.
[19] Id.
[20] (1993), 90 Ohio App.3d 284.
[21] 18 U.S.C. Section 1961 et seq., Title 18, U.S. Code.
[22] Universal at 291.
[23] (1981), 452 U.S. 576.
[24] Id. at 583.
[25] See United States v. Bledsoe (Cir. 8, 1982), 674 F.2d 647, andUnited States v. Riccobrese (Cir. 3, 1983), 709 F.2d 214.
[26] (Cir. 7, 1997), 116 F.3d 225.
[27] (Dec. 31, 1990), 5th Dist. No. CA-8094.
[28] (1992), 503 U.S. 258.
[29] Id. at 268-269.
[30] R.C. 2923.31(E).
[31] (1985), 473 U.S. 479.
[32] (1989), 492 U.S. 229.
[33] Stachon v. United Consumers Club Inc. (Cir. 7, 2000), 229 F.3d 673,677; Miller v. Norfolk Southern Ry. Co. (N.D. Ohio, 2002),183 F.Supp.2d 996, 1002-03.