In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1286

VIRGINIA E. BROUWER, WESLEY BAXTER,
ALBERTA E. HAESSIG, HARDY HICKS, JR.,
NATALIE HICKS, GERALD J. MOSS,
VIOLA ROBINETTE, JUNE YOST, and
RUTH WILCHER, individually and on
behalf of all others similarly situated,

Plaintiffs-Appellants,

v.

RAFFENSPERGER, HUGHES & CO.,
CATHERINE L. BRIDGE, and
BARNES & THORNBURG,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 92-753-C-D/F--S. Hugh Dillin, Judge.


Argued September 30, 1999--Decided January 13, 2000



   Before HARLINGTON WOOD, JR., COFFEY, and EVANS,
Circuit Judges.

   EVANS, Circuit Judge.  Today we find ourselves
looking at the intersection between a substantive
RICO violation of 18 U.S.C. sec. 1962(c) (the
Racketeering and Corrupt Organizations Act) and
a conspiracy violation pursuant to sec. 1962(d),
that is, trying to reconcile Reves v. Ernst &
Young, 507 U.S. 170, 113 S. Ct. 1163 (1993), with
Salinas v. United States, 522 U.S. 52, 118 S. Ct.
469 (1997). Our vehicle for trying to reconcile
these cases is this suit brought by a class of
unhappy investors against several defendants,
including an underwriting firm and a law firm,
growing out of work they did for an Indianapolis
company called the Firstmark Corporation which is
now bankrupt. The underwriting firm, a "Qualified
Independent Underwriter" (a QIU in securities
argot), is Raffensperger, Hughes & Co., Inc.
which got out of the case on its motion to
dismiss; Attorney Catherine L. Bridge and her law
firm, Barnes & Thornburg of Indianapolis, were
granted summary judgment. Motions to reconsider
were filed, the last one based on what was then

the new decision in Salinas. The motions were denied and this appeal was filed.

The issue in this case is, says the plaintiff-class, a purely legal one regarding the requirements for a RICO conspiracy violation under 18 U.S.C. sec. 1962(d), specifically, whether a party must agree to personally participate in the operation, management, or conduct of the racketeering enterprise for a conspiracy violation to exist under sec. 1962(d), as defendants claim and the district court found; or whether it is enough that a party agrees that some member of the conspiracy conduct or participate in the operation or management of an enterprise, as plaintiffs argue. It is not exactly a matter of first impression in this circuit, yet the starkness with which the issue is raised requires that we take a close look at several of our cases.

The district court's characterization of the facts/1 is not disputed on this appeal; we will present only a very brief summary. Firstmark is an Indiana holding company whose subsidiaries engaged in various financial services. The conspiracy here is alleged to have begun around 1981 when two defendants, Leonard Rochwarger and William Smith (who have settled the claims against them, as have several other persons originally named as defendants), devised a plan for Firstmark to become a wholly owned subsidiary of Rockmont Corporation, of which Rochwarger was president and CEO. Firstmark immediately began to have serious financial trouble. In fact, the transaction caused what is described as "crushing debt." As a result, Rochwarger began to sell off Firstmark assets as well as debt securities, including commercial paper. Firstmark's troubles continued in 1986, and its value as a going concern dropped.

At this time it is alleged that Rochwarger and the other defendants devised a scheme to conceal the true financial condition of Firstmark by increasing the margin between the quantity of notes sold to investors and those redeemed by investors. Proceeds from the note sales were used to pay interest and principal on previously sold notes and to finance the sale of more notes. To do this, the conspirators are alleged to have deceived investors into purchasing new notes, rolling over current notes, or otherwise refraining from redeeming their notes. At the same time, insiders were siphoning off the assets of Firstmark. The result was an ever-growing pyramid of debt that forced Firstmark into bankruptcy in 1988. The plaintiff-class fell for the scheme and lost a bundle--$57 million.

The rules of the National Association of Securities Dealers require its members (such as Firstmark) to use the services of QIUs to perform due diligence on registration statements and to recommend a minimum yield for the sale of notes like the ones involved here. That's how Raffensperger became involved with Firstmark; then the Barnes & Thornburg law firm was hired to perform the due diligence that would be the basis for providing the minimum yields at which the notes would be sold. The allegations are that the yields bore no relation to reality. In fact, it is alleged that the yields were set deceptively low to make the notes appear less risky to elderly investors. It is also alleged that both defendants knew that the investors were likely, if not certain, to lose their entire investment. The law firm allegedly had three main roles: to provide due diligence; to conceal the conspiracy and the substantive violations in registration statements and, when informed of a problem with cash flow by the Indiana Securities Commission, to halt the issuance of certain notes so that Firstmark's problems would not become public; and, once all hope of further note sales was lost, to facilitate the sale of Firstmark to another of the law firm's clients, Capitol Securities, despite knowing of the dire straits that the company was in.

The RICO conspiracy statute [sec. 1962(d)] provides:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The defendants in this case were accused of conspiring to violate subsection (c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The elements of a subsection (c) offense are (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. A pattern is the commission of at least two statutorily enumerated "predicate acts." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

What the Court did in Reves was to clarify what "participate" and "to conduct" mean under subsection (c); in other words, what the

substantive offense is. Reves involved whether an outside accounting firm could be liable under subsection (c) for its activities relating to an inflated valuation of a gasohol plant on the financial statements of a farm cooperative. The Court said no, observing that although liability is not limited to the "upper management" of an enterprise, to "'conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' sec. 1962(c), one must participate in the operation or management of the enterprise itself." 507 U.S. at 185. The Court concluded that "participate" requires that one have some part in directing the affairs of the enterprise, not primary responsibility, but "some part in directing the enterprise's affairs is required." 507 U.S. at 179. In other words, the statute applies not to "any person," but to any person associated with an enterprise who participates in the operation or management of the enterprise.

As to "outsiders," the Court rejected the argument that its analysis meant that they could never be held accountable under sec. 1962(c). What the Court said, in part, is:

Of course, "outsiders" may be liable under sec. 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs--that is, participate in the operation or management of the enterprise itself . . . .

507 U.S. at 185.

The question remains, however, as to what is required to conspire to violate the substantive provision. This is where Salinas comes in. Salinas, which was a criminal RICO prosecution, involved the requirement for predicate acts. The defendant in Salinas argued that he could not be convicted of a subsection (d) conspiracy offense unless the government proved that he personally agreed to commit two predicate acts. Using general conspiracy principles, the Court rejected the argument, concluding:

A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.

118 S. Ct. at 477. To be convicted of conspiracy a person must agree with other persons that they will engage in conduct that constitutes a crime. The purpose of the agreement is to facilitate the

commission of a crime, even though a particular defendant need not perform all of the criminal acts. A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a criminal offense. Salinas.

Salinas, applying as it does to predicate acts, did not specifically change the law of this circuit. As far back as United States v. Neapolitan, 791 F.2d 489 (7th Cir. 1986), we said that a conspiracy to violate RICO can be analyzed as two agreements: "an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts." At 499. As the sentence structure indicates, we have not required personal participation in the commission of the predicate acts. But also the sentence structure shows, at least implicitly, that we have required personal participation in the affairs of the enterprise. It is this requirement that the plaintiffs argue must be altered in light of Salinas. The argument is that if the general law of conspiracy applies to subsection (d), then it is wrong to require personal participation in the conduct of the affairs of the enterprise. Rather, if it is enough that one agree that someone commit the predicate acts, it should also be enough for a subsection (d) claim that a person agree that someone should conduct the affairs of the enterprise.

Thus the issue before us is whether Salinas means that one does not need to personally participate in the operation or management of the enterprise in order to violate subsection (d). Salinas, focused as it was on the issue of predicate acts, is not directly helpful in supplying an answer to the question. It referred, however fleetingly, to the enterprise requirement but said only that although an enterprise can exist with only one actor to conduct it, in most cases there will be more than one. That fact may "make it somewhat difficult to determine just where the enterprise ends and the conspiracy begins . . . ." 118 S. Ct. at 478.

To summarize that which is clear, subsection (d) of sec. 1962 requires an agreement to violate another provision of the statute, in this case subsection (c). As we have seen, after Reves subsection (c) applies only to those with some degree of management or control over the RICO enterprise. But under general conspiracy law, which Salinas says applies to subsection (d), a defendant does not have to agree personally to perform every aspect of a violation and, in particular, one does not need to agree personally to commit the predicate acts. But that leaves a question: what level of participation in the

conduct of the enterprise, then, does it take to conspire to violate subsection (c)? It is a question which has received a bit of attention both before and after Salinas. See, e.g., United States v. Antar, 53 F.3d 568 (3d Cir. 1995); Neibel v. Trans World Assurance Co., 108 F.3d 1123 (9th Cir. 1997); United States v. Posada-Rios, 158 F.3d 832 (5th Cir. 1998).

There are various possible answers. Conceivably, it could mean one must agree to actually manage or control, a notion we rejected in United States v. Quintanilla, 2 F.3d 1469 (1993). It could mean one has to agree to participate in the conduct of the enterprise. It could mean one has to agree to "maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a patten of racketeering activity," which was our formulation in Goren v. New Vision Int'l, Inc., 156 F.3d 721 (1998). It could mean one has to agree to exercise "some measure" of control over the corporation, as we put it in Bachman v. Bear, Stearns & Co., 178 F.3d 930 (1999). It could mean, as the plaintiffs argue, that one agrees that someone will participate in the control of the enterprise-- that is, that one does not need to agree to personally participate in the control of the enterprise, one needs to agree only that someone should be in charge. Or it could mean something like the formulation of the plaintiffs, offered at oral argument, that a RICO defendant must have knowledge of a violation and agree to facilitate any part of the subsection (c) violation.

In our long-established, two-part analysis of subsection (d) we have consistently required personal participation as to the first element and only an agreement that someone should perform the predicate acts. Neapolitan, 791 F.2d at 499. In Goren we concluded that a defendant can be charged under (d) even if he cannot be characterized as an operator or manager of a RICO enterprise under Reves. However, we also said that subsection (d) should not be used to criminalize mere association with an enterprise. In order to state a claim under subsection (d)

Ms. Goren must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals.

156 F.3d at 732. Goren indicates that the first element requires "each defendant" to participate, while the second requires only that each defendant agree that someone should commit the

predicate acts.

In Bachman we noted that Bear Stearns, which was allegedly hired to undervalue a business,/2 was a mere hireling. As to a subsection (d) claim, we said, in dicta, that Bear Stearns cannot be thought to have been conducting or to have agreed to conduct the affairs of any corporation. "That would require Bear Stearns to have exercised (or agreed to exercise, in order to be liable as a RICO conspirator) at least some measure of control over the corporations." 178 F.3d at 932.

We see no reason to disturb the requirement for some degree of personal participation as to the first element. It is not enough that one agree that someone should run the enterprise and then have no further concern about it. The participation element is different in kind from the requirement for a pattern of racketeering activity. Reves makes clear that subsection (c) does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts. It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity. Agreeing to participate somehow in an enterprise is active; it is personal. In Salinas the Court noted a close identity between the enterprise itself and the conspiracy to run it. An agreement to join a conspiracy is highly personal; similarly, an agreement to participate in the conduct of an enterprise is also personal and active. But how one agrees to get the job done-- through a pattern of racketeering activity--is not necessarily personal; it can be delegated.

We suspect that the perception of a conflict between Reves and Salinas does not arise solely or even primarily over a requirement for some degree of personal participation in the affairs of the enterprise. Rather, the conflict is over the level at which personal participation in the enterprise is required. The conflict is a result of the limitation set out in Reves as to who can be liable for the substantive offense--not everyone associated with the enterprise, but only those who somehow operate or manage the enterprise. How does that square with conspiracy law? Intuitively, it seems wrong that a person could conspire to violate a law which does not apply to him. The problem can be illustrated by contrasting a RICO conspiracy to violate subsection (c) with a more familiar conspiracy-- say one to distribute narcotics. To oversimplify, in a drug distribution conspiracy, a street seller can be a member of the conspiracy if he agrees with the goal of the conspiracy--to

distribute drugs. The underlying statute which he is conspiring to violate makes it unlawful for "any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" (Emphasis added.) 21 U.S.C. sec. 841. The law makes clear that any person who conspires to commit a drug offense is subject to the same penalties as a person who violates the substantive provision. 21 U.S.C. sec. 846. In other words, sec. 841 does not apply only to those persons who "participate, directly or indirectly, in the control" of the distribution network. If it did, would we confidently say that a street seller could be a conspirator?/3 In contrast, the limitation on the universe of people that subsection (c) of sec. 1962 applies to is what makes a conspiracy to violate that section conceptually difficult. It is a conspiracy to violate a very specific statute which only applies to those who meet the operation or management test of Reves.

Yet we previously have said that to be a conspirator under subsection (d) one does not need to be an operator or manager. MCM Partners v. Andrews-Bartlett & Assocs., 62 F.3d 967 (7th Cir. 1995), cert. denied, ___ S. Ct. ___ (Oct. 4, 1999). Although in Bachman we said that one must agree to exercise "at least some measure of control" over the corporation, we most often say that a defendant may conspire to violate subsection (c) "if [he] agreed 'to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity . . . .'" 62 F.3d at 980; see also Neapolitan, Goren, and Quintanilla. We think our formulation continues to describe in a general way the proper standard.

But it needs to be clarified because of a discussion in Reves which may cause the phrase to be misunderstood or to have taken on a meaning slightly different from that we intended prior to Reves.

We know now that our phrase "conduct or participate in the affairs" of the corporation is broader than the formulation under Reves for the underlying substantive offense. The Court in Reves explained:

The more difficult question is what to make of the word "participate." This Court previously has characterized this word as a "ter[m] . . . of breadth." Petitioners argue that Congress used "participate" as a synonym for "aid and abet." That would be a term of breadth indeed, for "aid and abet" "comprehends all assistance rendered by words, acts, encouragement, support, or

presence." But within the context of sec. 1962(c), "participate" appears to have a narrower meaning. We may mark the limits of what the term might mean by looking again at what Congress did not say. On the one hand, "to participate . . . in the conduct of . . . affairs" must be broader than "to conduct affairs" or the "participate" phrase would be superfluous. On the other hand, as we already have noted, "to participate . . . in the conduct of . . . affairs" must be narrower than "to participate in affairs" or Congress' repetition of the word "conduct" would serve no purpose.

507 U.S. at 178-179 (internal citations omitted). The phrase "participate in the conduct of affairs of an enterprise" has taken on the attributes of a term of art. It follows that our long-used phrase "participate in the affairs" may also have a subtly altered meaning after Reves, a meaning we could not have anticipated in Neapolitan. At the risk of splitting hairs that are already split, we will attempt to make sense out of all of this, reconcile Salinas and Reves, and explain the kind of personal participation we hold is necessary to violate subsection (d).

To conspire to commit a subsection (c) offense, one would not need, necessarily, to meet the Reves requirements: one does not need to agree personally to be an operator or manager. On the other hand, one cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone. That would impose a meaningless requirement and cast a frighteningly wide net. Rather, one's agreement must be to knowingly facilitate the activities of the operators or managers to whom subsection (c) applies. One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner. It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do.

All of this said, we are painfully aware that this is not a bright line, that district judges will have to evaluate whether what a defendant agreed to do is sufficient to bring his conduct within subsection (d). The district court in this case did a remarkable job of evaluating these issues. His conclusion, however, was that to be in violation of subsection (d) one must agree to personally participate in the operation or management of the enterprise. That conclusion was wrong. Therefore, we must reverse the court's judgment and remand the case for reevaluation of the liability of these defendants consistent with this opinion./4

REVERSED AND REMANDED.


/1 The district court correctly assumed facts favorable to the plaintiffs to be true when considering the defendants' motions. We, of course, must do the same.

/2 When we reviewed Bachman, which came to us on a challenge to a Rule 12(b)(6) dismissal, we assumed all alleged facts to be true without, as Chief Judge Posner noted, "vouching for their truth."

/3 The drug laws, of course, contain provisions which apply only to those in control; e.g., enhanced sentencing penalties for organizers or leaders. See 21 U.S.C. sec. 848(c). But that limitation is not found in sec. 841.

/4 Because this case presents a close question, our opinion has been circulated, pre-publication, to the full court under Circuit Rule 40(e). No judge voted in favor of hearing the case en banc. Circuit Judge Joel M. Flaum did not participate in this case.