> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 22, 2018
Decided June 7, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ROBERT W. GETTLEMAN, *District Judge*[*]

Nos. 17-3422 & 17-3571

| | |
|---|---|
| DAVID BIELFELDT and KAREN WALES, *Plaintiffs-Appellants*, | Appeals from the United States District Court for the Central District of Illinois. |
| *v.* | No. 1:15-cv-1419 |
| LEE C. GRAVES, *et al.*, *Defendants-Appellees*. | **Jonathan E. Hawley**, *Magistrate Judge*. |

## O R D E R

Lee Graves and David Bielfeldt founded ELM One Call Locators, Inc. ("ELM") as 50/50 Class A shareholders; they were also the sole directors of the company. Graves served as the Chief Executive Officer, defendant James Bourazak was corporate secretary, and plaintiff Karen Wales was a minority Class B shareholder. At the time of incorporation, ELM, Bielfeldt, and Graves entered into a Class A Stock Restriction Agreement ("SRA"). Article VIII, Section 8.02 of the SRA requires that Bielfeldt and Graves each consent to certain "Major Event[s]," including, as relevant to this appeal, "the issuance of debt or equity interests in the Company." Section 8.03 states that "[i]f either Bielfeldt or Graves requests in writing that the other consent to a Major Event,

---

[*] Of the Northern District of Illinois, sitting by designation.

consent shall be deemed given if the requesting party receives no written response within thirty (30) days after the receipt of such written request by the other party." Also relevant, Article VII of the SRA obliges ELM to notify every Class A shareholder in writing and disclose certain information at least thirty days before issuing stock or equity.

At the end of 2013, ELM faced a liquidity shortfall. To prevent ELM from defaulting on its liability insurance and to meet payroll obligations, Graves personally contributed approximately $1.8 million to the company. On January 16, 2014, Graves sent an email to Bielfeldt about the liquidity situation and possible funding options. Graves said that his "[f]irst and preferred option" was for Bielfeldt "to come up with $900K to equalize our contributions and risk." However, he stated "[i]f this option is not preferred then let's have your ownership valued and work on an exit strategy." He then said, "if you have another option, please let me know as I value our friendship and would like to see this worked out." Despite various communications that ensued, Bielfeldt never addressed Graves's additional capital contribution. As a result, on May 12, 2014, Graves sent Bielfeldt a letter pursuant to Section 8.02 of the SRA requesting consent for an equity issuance. Bielfeldt received Graves's letter but did not respond in writing.

At some point after thirty days elapsed, Graves took steps to issue himself additional shares of ELM (the "Issuance"), significantly diluting Bielfeldt's and Wales's ownership interests. Bielfeldt and Wales then filed suit against Graves, ELM, and Bourazak; they claimed the Issuance violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78b(j) ("10b-5"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–68. Plaintiffs also brought state law claims. In response, defendants brought a counterclaim seeking a declaratory judgment that the Issuance was valid. After both parties moved for summary judgment on the declaratory judgment claim, the district court invited defendants to file a motion for summary judgment on the federal claims as well. ELM accepted that invitation, and on October 26, 2017, the district court granted that motion.[1] The court declined to exercise supplemental jurisdiction over the remaining claims and counterclaims, and terminated the case. Plaintiffs now appeal. We review de novo a district court's grant of summary judgment,

---

[1] Neither Bourazak nor Graves explicitly joined ELM's second summary judgment motion. However, the district court did not err in terminating the case as to all defendants. ELM was on common ground with Bourazak and Graves, the court invited all defendants to move for summary judgment, and plaintiffs had an opportunity to respond. *See* Fed. R. Civ. P. 56(f); *see also Acequia, Inc. v. Prudential Ins. Co. of Am.,* 226 F.3d 798, 807 (7th Cir. 2000) ("[W]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant summary judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition.").

construing all facts and drawing all reasonable inferences in favor of the non-moving party. *See C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016).

"Rule 10b–5 … prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). Plaintiffs argue defendants' failure to include the terms of the Issuance in the May 12th letter constituted a material misstatement or omission. But unlike Article VII, Article VIII's Major Event's provision is not subject to any specific disclosure requirements; thus defendants were not required to include anything other than notice of the Major Event in the letter. Moreover, Bielfeldt's failure to respond to the May 12th letter in writing within thirty days is the equivalent of consent under Section 8.03 of the SRA. Accordingly, plaintiffs' 10b-5 claim fails.

To prevail under RICO, plaintiffs must show that defendants participated in an enterprise's affairs "through a pattern of racketeering activity." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 963 (7th Cir. 2000). A pattern requires the completion of at least two predicate acts. *Id.*; *see* 18 U.S.C. § 1961(5). Here, there was only one alleged activity—the single issuance of equity—so there could be no "pattern." Moreover, there was no racketeering. As the district court explained, "[d]efendants committed no fraud, misstatements, or omissions concerning the issuance of equity to Graves." Rather, after Graves funded the company, he allowed Bielfeldt an opportunity to maintain proportional ownership and provided Bielfeldt with information about the additional capital contribution. Bielfeldt simply failed to respond to the May 12th letter.[2]

AFFIRMED.

---

[2] Because we affirm the judgment of the district court, we also affirm the district court's award of costs to defendants. *See* Fed. R. Civ. P. 54(d)(1).