### UNITED STATES of America, Plaintiff–Appellee,

v.

### Gregory D. WILSON, Defendant–Appellant.

### No. 97–1626.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1997.

Decided Dec. 22, 1997.

Frances C. Hulin, Timothy A. Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Jon G. Noll, Jeffrey T. Page (argued), Springfield, IL, for Defendant–Appellant.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

In this appeal, we consider for the second time Gregory Wilson's sentence on his convictions for mail fraud and money laundering. On Wilson's first appeal, we vacated his 51–month sentence upon finding that the mail fraud and money laundering counts should have been grouped under U.S.S.G. § 3D1.2(d). *United States v. Wilson,* 98 F.3d 281, 283–84 (7th Cir.1996). Based upon that grouping decision, we agreed with Wilson that the district court had erred by adding a two-level multiple count adjustment under U.S.S.G. § 3D1.4. *Id.* at 284. Wilson's victory on appeal was short-lived, however, as the district court found on remand that our instruction to group the two convictions produced an even higher offense level and imprisonment range under the Guidelines. Whereas the district court had settled on an offense level of 22 and a criminal history category of I by not grouping the two convictions, resulting in an imprisonment range of 41 to 51 months, the court determined on remand that the proper offense level after grouping was 25, which produced a range of 57 to 71 months. The higher sentencing range resulted from the district court's conclusion that our grouping decision meant that Wilson's acts of mail fraud must be considered as relevant conduct with respect to the money laundering under U.S.S.G. § 1B1.3(a)(2). Using the new higher sentencing range, then, the district court imposed a sentence at the top of the range—71 months. Thus, on remand from our decision in his favor, Wilson received a sentence 20 months longer than the one he had successfully challenged. Because we find that the issue of relevant conduct was not properly before the district court on remand from our initial decision, we again vacate Wilson's sentence and remand for resentencing.

We assume familiarity with our earlier opinion and proceed directly to the matter at hand. At the first sentencing, Wilson's adjusted offense level for his mail fraud conviction (calculated under U.S.S.G. § 2F1.1) and for his money laundering conviction (calculated under U.S.S.G. § 2S1.1) totaled 23. In determining the "value of funds" under the money laundering guideline, both the Presentence Report ("PSR") and the district court concluded that only the portion of the funds

actually laundered should be considered (i.e., $440,578.61 out of the $3,114,334.00 taken from victims of the mail fraud scheme). That is because neither the probation officer nor the district court believed that Wilson's acts of mail fraud qualified as relevant conduct with respect to the money laundering under section 1B1.3. As a result, the district court added only three levels to Wilson's base offense level of 20 under subsection (b)(2) of the money laundering guideline, rather than the six levels that would have been added had the total amount of the loss occasioned by the mail fraud been considered. *See* U.S.S.G. § 2S1.1(b)(2). The government raised no objection to the PSR's recommendation on the relevant conduct issue and thus never argued to the district court that the acts of mail fraud should be considered as relevant conduct with respect to the money laundering. In the absence of an objection from the government, the district court accepted the PSR's recommendation and sentenced Wilson on that basis.

Once we determined that the mail fraud and money laundering counts should be grouped under section 3D1.2(d), however, the probation officer, the government, and the district court all believed that the amount of loss from the mail fraud could be considered in calculating Wilson's adjusted offense level under the money laundering guideline. There were two reasons for that belief. The first is based on subsection (a)(2) of the relevant conduct guideline, which itself references grouping under section 3D1.2(d). That subsection indicates that relevant conduct includes,

> solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. § 1B1.3(a)(2). The district court believed that as a result of our grouping

decision, this subsection would now come into play, meaning that the acts of mail fraud should be considered as conduct relevant to the money laundering. The court found further support for that conclusion in section 3D1.3(b), which provides that:

> In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to the Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply (*e.g.*, theft and fraud), apply the offense guideline that produces the highest offense level.

U.S.S.G. § 3D1.3(b). A note to that section reiterates the point:

> When counts are grouped pursuant to § 3D1.2(d), the offense guideline applicable to the aggregate behavior is used. If the counts in the Group are covered by different guidelines (*e.g.*, theft and fraud), use the guideline that produces the highest offense level. Determine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole.

U.S.S.G. § 3D1.3, comment. (n.3). The district court found that under these provisions, the entire $3,114,334.00 of which Wilson's victims had been defrauded must be considered as the "value of the funds" under the money laundering guideline, thereby producing an adjusted offense level of 26, rather than 23. The court then added two additional levels under section 3B1.3 because Wilson had abused a position of trust. Although the abuse of trust had occurred solely in connection with the mail fraud and had been applied only in calculating Wilson's offense level under the mail fraud guideline at the initial sentencing, the court believed that after grouping, the commentary to section 3D1.3(b) required that the adjustment also be applied under the money laundering guideline. Thus, after applying a three-level reduction for acceptance of responsibility, Wilson's total offense level was 25, three

levels higher than that used at the earlier sentencing.

■ That offense level was erroneous, however, because the district court exceeded the scope of our remand in reassessing the question of relevant conduct. In advance of our first decision in this case, the government had never asserted that Wilson's acts of mail fraud qualified as relevant conduct for purposes of his money laundering conviction under section 1B1.3. The government, in other words, never suggested that the mail fraud and money laundering were related as relevant conduct either under subsection (a)(1) or (a)(2) of the relevant conduct guideline. In the absence of such an argument, the district court accepted the PSR's recommendation that the mail fraud did not qualify as relevant conduct with respect to the money laundering. And having never advocated a relevant conduct finding below, the government did not cross-appeal on that issue once Wilson challenged the grouping determination in this court. The government also never suggested in briefing the first appeal that a decision in Wilson's favor on the grouping issue would serve to reopen the matter of relevant conduct. For all intents and purposes, then, the relevant conduct issue had been finally determined by the time this court considered Wilson's first appeal, and nothing we could say about grouping would serve to reopen that issue.

But the district court, along with the probation officer and the government, all believed that our grouping decision did reopen the matter, largely due to section 1B1.3(a)(2)'s reference to the particular grouping rule on which we relied. We cannot agree. The government could have but did not argue in connection with the original sentencing that Wilson's acts of mail fraud qualified as relevant conduct with respect to the money laundering under section 1B1.3(a)(2). That section may apply even where there is no actual grouping under section 3D1.2(d). See U.S.S.G. § 1B1.3, comment. (n.3) ("multiple counts of conviction are not required for subsection (a)(2) to apply."); see also United States v. Mullens, 65 F.3d 1560, 1564 (11th Cir.1995), cert. denied, ——

U.S. ——, 116 S.Ct. 1337, 134 L.Ed.2d 487 (1996). The government thus did not need to be told by this court that the counts should be grouped under section 3D1.2(d) before it could make a relevant conduct argument under section 1B1.3(a)(2). Indeed, the government had every incentive to make that argument at the outset because had the district court accepted it, Wilson's sentencing range would have exceeded the 41 to 51 month range initially recommended by the PSR and applied by the district court. The government chose a different tact, however, conceding that the acts of mail fraud did not constitute relevant conduct with respect to the money laundering, and further arguing that the two convictions should not be grouped. Although we ultimately rejected the government's grouping position in Wilson's first appeal, our holding on that issue did not entitle the government to reverse its course on the issue of relevant conduct. As we said, that issue was effectively closed by the time Wilson's appeal reached this court, and the government cannot reopen it simply because subsection (a)(2) of the relevant conduct guideline makes reference to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." U.S.S.G. § 1B1.3(a)(2). The government waived any reliance on that subsection long ago.

■ Nor does section 3D1.3(b) or its commentary operate to excuse the government's waiver. The application note explains that when counts covered by different guidelines are grouped under section 3D1.2(d), specific offense characteristics and adjustments under Chapter Three are to be applied "based upon the combined offense behavior taken as a whole." U.S.S.G. § 3D1.3, comment. (n.3). Practically speaking, that means that the specific offense characteristics and adjustments are to be applied by considering the offense of conviction and all relevant conduct. United States v. Eng, 14 F.3d 165, 170–71 (2d Cir.), cert. denied, 513 U.S. 807, 115 S.Ct. 54, 130 L.Ed.2d 13 (1994); United States v. Cueto, 9 F.3d 1438, 1441 (9th Cir.1993); United

*States v. Fells*, 920 F.2d 1179, 1184 (4th Cir.1990), *cert. denied*, 501 U.S. 1219, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991); *see also United States v. Walker*, 112 F.3d 163, 167 (4th Cir.1997); *Mullens*, 65 F.3d at 1564. Although the mail fraud may well qualify as conduct relevant to the money laundering under section 1B1.3, the government failed to make that argument when it had the opportunity to do so, and the district court proceeded to find that the relevant conduct criteria were not satisfied. Neither section 3D1.3(d) nor its commentary authorized a change of course on that issue after our remand.

In sum, then, the government waived any argument that the total loss from the acts of mail fraud should be used in determining the "value of the funds" under the money laundering guideline. It similarly waived the argument that the adjustment for an abuse of trust should be applied under the money laundering guideline even where the abuse occurred solely in connection with the mail fraud. The district court's determinations to that effect were thus beyond the scope of the remand we ordered in *Wilson I*. We therefore vacate Wilson's 71–month sentence and remand with instructions that Wilson be resentenced utilizing an offense level of 20, a criminal history category of I, and an imprisonment range of 33 to 41 months.

VACATED AND REMANDED WITH INSTRUCTIONS.