In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-2677 & 10-2933

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESUS TELLO and
KENNETH HILL,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 240—**Rudolph T. Randa**, *Judge*.

ARGUED JANUARY 10, 2012—DECIDED JULY 18, 2012

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Jesus Tello and Kenneth Hill, both members of the Milwaukee chapter of the Latin Kings street gang, pleaded guilty to a charge that they had conspired to conduct the affairs of the Latin Kings through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(d). Tello appeals his conviction, contending that the acts of racketeering referenced in his plea agree-

ment varied materially from those alleged in the indict-
ment. In essence, he contends that he pleaded guilty to
an offense different from the one with which he was
charged. Hill contests the sentence he received fol-
lowing a prior, successful appeal challenging his
treatment as a career offender. Hill contends that the
district court on remand substantially enhanced his
offense level based on a ground that the government
had waived by not raising it sooner. For the reasons that
follow, we affirm Tello's conviction but vacate Hill's
sentence.

## I.

The Almighty Latin King Nation is a national, criminal
enterprise composed of individual chapters located in
various cities throughout the country. *See United States
v. Olson*, 450 F.3d 655, 661-62 (7th Cir. 2006) (describing
organization of Latin Kings). Its members have en-
gaged in acts of violence—including murder, attempted
murder, robbery, and extortion—as well as narcotics
distribution. The Milwaukee chapter of the gang was
founded in the mid-1980s and over time came to control
a large territory on the city's south side. *Id.* at 662.
Within the Milwaukee chapter of the gang, there were,
at the time of the indictment, four subsets of the Latin
Kings: the 19th Street Kings, the Sawyer Kings, the Wild
Walker Kings, and the 23rd Street Kings. Tello was a
member of the 23rd Street Kings, while Hill was a
member of the 19th Street Kings. Tello and Hill were
among forty-nine Milwaukee-area Latin Kings indicted

in September 2005 on charges of racketeering, racketeering conspiracy, narcotics trafficking and conspiracy, and unlawful possession and distribution of firearms.

Count One of the indictment alleged that Hill, Tello, and the other defendants conducted or participated, directly and indirectly, in the conduct of the affairs of an enterprise engaged in or affecting interstate commerce—namely, the Latin Kings—through a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). R. 12 at 3 ¶ 1. This count alleged generally that "[c]riminal activity committed by the members of the Latin King enterprise include[d] murder, attempted murder, drug trafficking, firearm offenses, robbery, kidnapping, assault and battery, home invasion, arson, drive-by shootings and intimidation of witnesses." *Id.* at 3 ¶ 2. It subsequently listed some sixty predicate acts of racketeering that together formed the pattern of racketeering through which the affairs of the Latin Kings allegedly had been conducted. *Id.* at 9-36. Tello was identified as the perpetrator of or a participant in three of these alleged predicate acts: No. 10—a conspiracy to murder unnamed rival gang members; No. 14—the attempted murder of an individual by the name of Jose Espinoza; and No. 19—the attempted murder of Rene Carmona, Daniel Carmona, and Pedro Gaona, who were members of the Mexican Posse, a rival gang. *Id.* at 13-14, 15-16, 18. Hill was separately named in connection with five predicate acts: Nos. 31, 44, and 45—all involving the distribution of or the possession with the intent to distribute marijuana; No. 47—the kidnapping

and intimidation of a witness for the purpose of obstructing justice; and No. 60—conspiracy with other Latin King members to distribute and to possess with the intent to distribute cocaine, crack cocaine, and marijuana. *Id.* at 23, 28-30, 36.

Count Two of the indictment alleged that the defendants had conspired to conduct, and to participate directly or indirectly in the conduct of, the affairs of the Latin Kings enterprise through a pattern of racketeering activity, in violation of section 1962(d). R. 12 at 37-39 ¶ 17-18. That pattern allegedly included a variety of federal and state offenses, including the distribution of marijuana, cocaine, and crack cocaine; kidnapping; witness tampering and retaliation; homicide; robbery; and arson. *Id.* The allegations of Count One, including the various predicate acts of racketeering set forth there, were incorporated by reference, *id.* at 37 ¶ 14, and it was further alleged to be "part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise," *id.* at 39 ¶ 18.

Like most of their co-defendants, both Tello and Hill pleaded guilty to Count Two of the indictment, charging them with RICO conspiracy. Because Hill does not challenge his conviction, we may pass over the details of his guilty plea for now and focus for a moment on Tello's written plea agreement and change-of-plea colloquy.

Count Two of the indictment was incorporated into paragraph 4 of Tello's plea agreement, R. 1473 at 1-2

¶ 4 & Ex. A, and in the next paragraph of that agreement Tello stated expressly that he "acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4," *id.* at 2 ¶ 5. Tello also specifically admitted "that he conspired with other Latin King gang members to commit at least two qualifying criminal act[s] in furtherance of the criminal enterprise." *Id.* The agreement then proceeded to identify two criminal acts that Tello acknowledged having committed in furtherance of the charged conspiracy: (1) on July 12, 2002, Tello had fired shots at rival Mexican Posse gang members Rene and Daniel Carmona and Pedro Gaona; and (2) on October 24, 2004, Tello and other Latin King members had sexual contact with a female under the age of 18 who was unconscious for much of the assault, an offense for which Tello was subsequently convicted in state court. *Id.* at 2-3 ¶ 5. The first of these incidents corresponded to predicate act No. 19 set forth in Count One of the indictment. *See* R. 12 at 18-19. The second of these incidents, however, did not correspond to any of the predicate acts alleged in Count One. Tello and his counsel signed the agreement on April 1, 2009.

Tello appeared before the court on April 7, 2009, to change his plea from not guilty to guilty. After ascertaining that Tello understood the various rights he was giving up by pleading guilty, the court asked Tello whether he had reviewed the facts alleged in Count Two and the additional facts set forth in paragraph 5 of the plea agreement, and Tello said that he had. R. 1824 at 6. The court then asked Tello whether those were the facts

to which he intended to plead guilty, and Tello answered in the affirmative. *Id.* The court then confirmed that Tello had no questions about the plea, that he understood the maximum penalties that might be imposed on him, and that it was his wish to plead guilty. *Id.* at 6-7. Tello then formally pleaded "[g]uilty" to Count Two. *Id.* at 7. Satisfied that Tello was pleading guilty knowingly, intelligently, and voluntarily, the district court accepted his plea and found him guilty. *Id.* at 8.

Subsequent to Tello's guilty plea, the court held an evidentiary hearing to assess Tello's culpability with respect to a third criminal act—identified as predicate act No. 14 in Count One of the indictment, R. 12 at 15-16—involving the attempted murder of Jose Espinoza on or about June 4, 2002. R. 1666. Espinoza had been shot in the head but miraculously had survived the attack. Tello denied that he was the individual who shot Espinoza, and as the government contended the shooting constituted relevant conduct that the court should consider in sentencing Tello, it was necessary for the court to take evidence and render a finding as to whether Tello was in fact the shooter. This was a contingency that the parties had anticipated in the plea agreement. R. 1473 at 6 ¶ 14. After considering the evidence presented at that hearing, including the testimony of Espinoza himself, the court found that Tello had in fact shot Espinoza and that pursuant to section 1B1.3 of the Sentencing Guidelines, this constituted relevant conduct for sentencing purposes. R. 1748.

Tello was sentenced on June 30, 2010. The guideline governing RICO offenses directs the court to use the

offense level applicable to one of the predicate offenses underlying the RICO charge if that offense level is greater than the default level specified by the RICO guideline. *See* U.S.S.G. § 2E1.1. Consistent with that directive, and in view of Tello's acknowledgment that he had fired a gun at members of the rival Mexican Posse gang on July 12, 2002, the court referenced the guideline for attempted murder. *See* U.S.S.G. § 2A2.1.[1] The court then applied a three-level enhancement to the base offense level specified by that guideline based on the degree of injury that had been inflicted on Rene Carmona (he was shot in the leg) in that attack. R. 1825 at 10-11. The parties had not agreed to that enhancement in the plea agreement, but they had acknowledged that the government was free to seek that enhancement at sentencing. R. 1473 at 6 ¶ 14. Tello's adjusted offense level, coupled with his criminal history, resulted in an advisory sentencing range of 121 to 151 months. The court opted to impose a sentence at the top of that range, citing among other factors Tello's significant

---

[1] The court opted not to take the Espinoza shooting into account in calculating the offense level because, according to the probation officer's assessment, that shooting would have produced a higher base offense level than the one the parties had adopted in their plea agreement. *See* R. 1473 at 6 ¶ 15 (plea agreement) (specifying base offense level of 27); Revised PSR dated June 22, 2010 at 6 (assigning base offense level of 30 to Espinoza shooting); R. 1825 at 10 (sentencing hearing) (adopting base offense level of 27 in accord with plea agreement).

degree of involvement with the Latin Kings, the violent nature of the criminal acts Tello had committed in furtherance of the conspiracy, and his lack of cooperation with the authorities.

Hill was initially classified as a career offender (a designation that added 13 levels to his final offense level) and was ordered to serve a prison term of 188 months. *See* U.S.S.G. § 4B1.1. He appealed, challenging the career-offender designation. We concluded that because one of the two prior convictions on which that designation rested—a conviction in Wisconsin state court for second degree recklessly endangering safety—did not constitute a crime of violence, Hill did not qualify as a career offender. *United States v. Hill*, 372 F. App'x 656, 657-58 (7th Cir. 2010) (non-precedential decision). We therefore remanded for resentencing, directing the district court on remand to address Hill's further contention that the conduct underlying his reckless endangerment conviction was carried out in furtherance of the conspiracy to which he had pleaded guilty and therefore should not be included in his criminal history calculation. *Id.* at 658.

On remand, the district court accepted the government's argument, not raised previously, that Hill was an accessory after the fact to a murder committed by a fellow Latin Kings member. *See* U.S.S.G. § 2X3.1. The .32-caliber revolver used to commit that murder was among four firearms that were discovered in a search of the residence of Hill's girlfriend on the day after the murder. The weapons were secreted above the ceiling in the

bedroom that Hill used. Hill admitted to investigators that he allowed the Latin Kings to use that residence to store weapons, and he gave them details as to how three of the four firearms had come to be there. He denied knowing that the .32-caliber revolver was present or where it came from, however. To rebut Hill's claim of ignorance, the government elicited testimony from a police detective at Hill's resentencing that given Hill's status as a high-ranking member of the Latin Kings (Hill was a "Casinca," or second in command), it was "entirely unlikely" that another gang member would store a murder weapon at the residence without Hill's knowledge. R. 1857 at 12. The district court in turn found it "beyond . . . comprehension" that Hill would not have known that the gun was stored at the residence in the ceiling above his bedroom. *Id.* at 28. The court found that Hill's knowing concealment of the weapon was sufficient to render him an accessory after the fact to the murder. *Id.* at 28-29.

The finding that Hill was an accessory after the fact had the effect of raising his offense level and substantially increasing the sentencing range recommended by the Sentencing Guidelines. Absent that finding, Hill's total offense level would have been 16, as indicated in the updated presentence report prepared by the probation officer on remand. When coupled with Hill's criminal history of VI, that would have produced an advisory sentencing range of 46 to 57 months; although that range was superseded by the statutory minimum of 60 months specified by 18 U.S.C. § 924(c). *See* U.S.S.G.

§ 5G1.1(b). By contrast, the application of the accessory guideline resulted in a total offense level of 27, which in turn yielded an advisory sentencing range of 130 to 162 months, more than twice the original range. The court ordered Hill to serve a sentence at the top of that range, 162 months.

The government first raised its contention that Hill was an accessory after the fact to the murder in a letter it sent to the court in advance of Hill's resentencing. R. 1786. The accessory-after-the-fact guideline was not one referenced in Hill's plea agreement, despite the parties' acknowledgment that the gun used to commit the murder had been discovered in his girlfriend's residence (referred to in the agreement as Hill's residence), R. 1130 at 3-4, and their further acknowledgment that the parties had "discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense . . .," *id.* at 6 ¶ 12. Similarly, the probation officer made no finding that Hill qualified as an accessory after the fact, either in the presentence report prepared for Hill's original sentencing or for the second sentencing on remand from the prior appeal. Hill himself objected to the government's new argument in a handwritten letter to the court, noting that "the sole purpose" for which he was before the court a second time was for resentencing after the court determined how his reckless endangerment conviction was to be treated vis-à-vis his criminal history. R. 1793 at 2.

**II.**

As we have noted, Tello challenges his conviction on appeal, whereas Hill challenges his sentence. We take each appeal in turn.

A. Tello

Tello elected to plead guilty to the RICO conspiracy charge set forth in Count Two in a written plea agreement. In his plea agreement, he also acknowledged responsibility for two crimes committed in furtherance of the alleged conspiracy: (1) the July 2002 shooting attack on rival Mexican Posse gang members Rene Carmona, Daniel Carmona, and Pedro Gaona; and (2) the October 2004 sexual assault on a minor female. The first of these incidents was among the predicate acts of racketeering attributed to Tello in Count One of the indictment (the substantive RICO charge) but the second was not.

Tello argues that his guilty plea (and thus his conviction) is invalid because the sexual assault charge referenced in his plea agreement was not one of the predicate acts of racketeering identified in the indictment. Tello assumes that the predicate acts of racketeering attributed to him in Count One became part of the RICO conspiracy alleged in Count Two and served to delineate the parameters of that conspiracy. His plea agreement, however, acknowledged only one of the three predicate acts attributed to him in Count One and added a second that was never mentioned in the

indictment. Thus, in Tello's view, there was a disparity between the RICO conspiracy alleged in the indictment and the one described in his plea agreement, with the result that he pleaded guilty to a conspiracy different from the one with which he was charged. Although Tello does not use the term "constructive amendment," his argument is, in essence, a contention that the plea proceeding (including both the plea agreement and the change-of-plea hearing) constructively amended the conspiracy charge and thereby violated Tello's Fifth Amendment right to indictment by a grand jury on all charges for which he is held to answer. U.S. CONST. amend. 5; *see United States v. Miller*, 471 U.S. 130, 140, 105 S. Ct. 1811, 1817 (1985); *Stirone v. United States*, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960); *United States v. Haskins*, 511 F.3d 688, 692 (7th Cir. 2007).[2] Tello believes his guilty plea is invalid by reason of the disparity, and he seeks

---

[2] Because the plea agreement omitted mention of two of the predicate acts mentioned in the indictment, one might argue that the omission constituted a narrowing of the charged conspiracy and thus a variance from the indictment. *See, e.g.*, *United States v. Rosin*, 892 F.2d 649, 651 (7th Cir. 1990) (variance narrows charges in indictment, whereas constructive amendment broadens bases for conviction by establishing offense not fully contained within indictment). However, because the plea agreement also references a predicate act not alleged in the indictment, and because it is Tello's contention that he pled guilty to an offense distinct from the one with which he was charged, we view the constructive amendment doctrine as the one most appropriate to the argument Tello is making.

to have his plea and conviction set aside and the case remanded for further proceedings.

Because Tello failed to raise this issue below and did not ask the district court for leave to withdraw his guilty plea, our review is for plain error. *E.g.*, *United States v. Perez*, 673 F.3d 667, 669 (7th Cir. 2012); *United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008). Under the plain error standard of review, we will reverse the district court's judgment only if we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings. *Perez*, 673 F.3d at 669 (quoting *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010)). In the present context, a plain error is one that raises a reasonable probability that the defendant would not have pleaded guilty absent the error. *E.g.*, *Griffin*, 521 F.3d at 730.

To understand why Tello's argument fails, it is necessary to appreciate the distinction between the substantive RICO charge set forth in Count One of the indictment—to which Tello did not plead guilty—and the racketeering conspiracy charge set forth in Count Two—to which he did plead guilty. Count One alleged a violation of section 1962(c). That section of the statute makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern

of racketeering activity . . . ." In short, section 1962(c) makes it a crime to operate or manage an enterprise affecting interstate commerce through a pattern of racketeering activity. *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 963-64 (7th Cir. 2000) (construing *Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163 (1993)).

The statute in turn defines a pattern of racketeering activity to require at least two acts of racketeering activity committed within a ten-year period. *See* 18 U.S.C. § 1961(5). To be guilty of the substantive 1962(c) offense, then, an individual must, among other things, participate in two or more predicate acts of racketeering. § 1962(c); *see Salinas v. United States*, 522 U.S. 52, 62-63, 118 S. Ct. 469, 476 (1997); *United States v. Flemmi*, 245 F.3d 24, 26 (1st Cir. 2001); *United States v. Diaz*, 176 F.3d 52, 93 (2d Cir. 1999); *United States v. Vaccaro*, 115 F.3d 1211, 1220 (5th Cir. 1997); *United States v. Starrett*, 55 F.3d 1525, 1553-54 (11th Cir. 1995).

Count Two, by contrast, charged Tello with conspiring to conduct the affairs of the Latin Kings through a pattern of racketeering, in violation of section 1962(d). Whereas subsections (a) through (c) of section 1962 are aimed at substantive RICO offenses, subsection (d) is aimed at the unlawful agreement to commit one of the substantive offenses identified in the preceding subsections, *see United States v. Quintanilla*, 2 F.3d 1469, 1484 (7th Cir. 1993); and in this case, Count Two alleged that Tello and his codefendants had conspired to violate subsection (c). In order to establish Tello's guilt on Count Two, it was not necessary to show that he

actually conducted the affairs of the Latin Kings, or participated in the conduct of those affairs, through a pattern of racketeering activity comprising at least two predicate acts of racketeering. That would have been the proof necessary to establish Tello's guilt on Count One, which alleged a substantive RICO offense. But the section 1962(d) conspiracy provision, unlike section 1962(c), is not a substantive RICO offense. *Quintanilla*, 2 F.3d at 1484; *see also United States v. Glecier*, 923 F.2d 496, 499-500 (7th Cir. 1991). It punishes the agreement to commit such an offense. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731 (7th Cir. 1998), *modified in other respects by Brouwer*, 199 F.3d at 965; *Glecier*, 923 F.2d at 500. A section 1962(d) conspiracy charge thus does not require proof that the defendant committed two predicate acts of racketeering, *Salinas*, 522 U.S. at 63, 65-66, 118 S. Ct. at 476, 478, that he agreed to commit two predicate acts, *ibid.*, or, for that matter, that any such acts were ultimately committed by anyone, *id.* at 63, 118 S. Ct. at 476 (noting that section 1962(d) includes "no requirement of some overt act or specific act"); *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996).

Tello's appeal fails to recognize this distinction. His argument, focused as it is on the difference between the predicate acts referenced in the indictment and those identified in his plea agreement, presumes that proof of at least two specific predicate acts of racketeering that he committed (or agreed to commit) was a prerequisite to his conviction for racketeering conspiracy under section 1962(d). This is the very presumption that the Supreme Court in *Salinas* described as

"wrong." 522 U.S. at 63, 118 S. Ct. at 476. In order to con-vict a defendant under section 1962(d), the government need only prove that he agreed that some member(s) of the conspiracy would commit two or more predicate acts, not that the defendant himself committed or agreed to commit such acts. *United States v. Benabe*, 654 F.3d 753, 776 (7th Cir. 2011) (citing *Salinas*, 522 U.S. at 65-66; 118 S. Ct. at 478), *cert. denied*, 132 S. Ct. 1051, 1054, 1612, 1986 (2012); *United States v. Campione*, 942 F.2d 429, 437 (7th Cir. 1991); *see also Glecier*, 923 F.2d at 500 ("Neither overt acts nor specific predicate acts that the defendant agreed personally to commit need be alleged or proved for a section 1962(d) offense.") (citations omitted); *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986) ("[S]ection 1962(d) [is] broad enough to encompass those persons who, while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate crimes."), *abrogation on other grounds recognized by United States v. Rogers*, 89 F.3d 1326, 1336-37 (7th Cir. 1996); *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011); *Goren*, 156 F.3d at 731.

Tello's understanding of RICO conspiracy is one that improperly attempts to import the requirements of the substantive offense set forth in subsection (c) of the statute into the conspiracy offense identified in sub-section (d), by demanding that each named defendant agree to commit at least two predicate acts of racketeering himself. Those acts in turn would become essential ele-ments of the charged conspiracy, thus giving rise to the type of argument Tello is making in this appeal. But Tello's understanding would sever section 1962(d) from

its roots in traditional conspiracy law. *See Neapolitan*, 791 F.2d at 497. Ordinary conspiracy principles require only that the conspirators embrace a common criminal objective. *See, e.g., United States v. Green*, 648 F.3d 569, 579 (7th Cir. 2011); *United States v. King*, 627 F.3d 641, 651 (7th Cir. 2010). Here, the agreed-to goal would be that the affairs of the enterprise would be carried out through a pattern of two or more racketeering acts committed by some member or members of the conspiracy. *See Quintanilla*, 2 F.3d at 1484-85; *see also Brouwer*, 199 F.3d at 967 (defendant must knowingly agree to perform services of a kind which facilitate the activities of those who operate the enterprise). Requiring an agreement by each conspirator to commit two predicate acts himself would require a degree of personal involvement in the offense that is unprecedented in conspiracy law. *Neapolitan*, 791 F.2d at 497-98. Indeed, by making the commission of two or more predicate acts by each conspirator an essential element of the offense, Tello's understanding of RICO conspiracy would essentially require that a defendant commit the substantive RICO offense set out in subsection (c) of the statute, and thereby render the conspiracy offense set out in subsection (d) a nullity. *Glecier*, 923 F.2d at 501; *see also Quintanilla*, 2 F.3d at 1485. That result would be inconsistent with traditional principles of statutory interpretation. *See, e.g., United States v. Atlantic Research Corp.*, 551 U.S. 128, 137, 127 S. Ct. 2331, 2337 (2007); *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125 (2001).

Having in mind the basic distinction between a charge of a substantive RICO violation under section 1962(c)

and a conspiracy charge under section 1962(d), we turn our attention to what was alleged in the conspiracy charge set forth in Count Two of the indictment against Tello and his codefendants, and then we will compare those allegations to the facts that Tello admitted in pleading guilty. Our review of Count Two and Tello's guilty plea necessarily must focus on the essential elements of RICO conspiracy, for it is only a divergence between allegations and proof as to those elements that will result in a constructive amendment of the charge. *See Miller*, 471 U.S. at 136, 105 S. Ct. at 1815 ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'") (quoting *Ford v. United States*, 273 U.S. 593, 602, 47 S. Ct. 531, 534 (1927)); *United States v. Cina*, 699 F.2d 853, 857-58 (7th Cir. 1983) ("In general, either an amendment or a variance will be allowed to stand if it does not change an 'essential' or 'material' element of the charge so as to cause prejudice to the defendant."); *see also United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006); *United States v. Krilich*, 159 F.3d 1020, 1027 (7th Cir. 1998); *United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir. 1991); *United States v. Williams*, 798 F.2d 1024, 1032-33 (7th Cir. 1986).

For an indictment to adequately set forth the elements of a racketeering conspiracy, it need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy, the objective of which was to operate that enterprise through a pattern of racketeering activity. *Glecier*, 923 F.2d at 500. Here, Count Two of the indictment alleged, in relevant part:

15. At various times relevant to this Indictment, the defendants named in Count Two and others known and unknown, were members and associates of the Latin Kings, a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, extortion and distribution of controlled substances, and which operated principally on the south side of Milwaukee.

\* \* \*

17. From on or about January 1, 1998, and continuing until at least September 27, 2005, in the State and Eastern District of Wisconsin, and elsewhere, [the defendants, including] . . . Jesus Tello, a/k/a/ "Spider,". . . together with other persons known and unknown, being members and associates of the racketeering enterprise described in paragraphs 2 through 17 that is, the Latin Kings, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code §1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity involving multiple acts indictable under the provisions of Title 18, United States Code, sections, 1201, 1512, 1513; and multiple acts involving violations of the laws of the State of Wisconsin, chargeable under the provisions of Wisconsin Statutes, Sec-

> tions 940.01, 939.32, . . . 939.31, 943.32, 943.02 and 940.31; and multiple acts involving the distribution of controlled substances including cocaine, cocaine base in the form of "crack" cocaine and marijuana in violation of the laws of the United States, including Title 21, United States Code, Sections 841 and 846.
>
> 18. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

R. 12 at 37-39. These allegations, accepted as true, were sufficient to establish that Tello knowingly agreed to conduct the affairs of the Latin Kings through a pattern of racketeering activity. As we have discussed, it was not necessary for Tello to agree to commit specific predicate acts or to participate in the commission of those acts as long as he agreed the acts would be committed on behalf of the conspiracy. *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 980 (7th Cir. 1995); *Quintanilla*, 2 F.3d at 1484; *Glecier*, 923 F.2d at 500. Both paragraphs 15 and 17 cite multiple examples of racketeering activity in which members of the Latin Kings engaged and agreed to engage, including acts of violence and acts involving the distribution of controlled substances, and paragraph 18 alleges that each defendant agreed that some member of the conspiracy would commit at least two such predicate acts. Further detail was unnecessary: the indictment did not need to identify the specific predicate acts that Tello agreed would be committed, *see Campione*, 942 F.2d at 436, 437,

nor was it necessary for the government to prove that any of the racketeering acts referenced in Count Two occurred at a particular time or place. *Benabe*, 654 F.3d at 777. *See, e.g., Glecier*, 923 F.2d at 500-01 (indictment sufficient despite fact that it did not list specific predicate acts in which defendant was involved, where it alleged that defendant knowingly joined a conspiracy, the objective of which was to operate enterprise through pattern of racketeering activity consisting of multiple acts of bribery: "[The] separate crime [of conspiracy] centers on the act of *agreement*, which makes unnecessary—and in many cases impossible—the identification in the indictment of specific predicate acts that have come to fruition.") (emphasis in original) (citing *United States v. Phillips*, 874 F.2d 123, 127-28 n. 4 (3d Cir. 1989) (indictment was sufficient in charging elements of RICO conspiracy despite the fact that it did not specify particular acts of bribery and extortion in which defendants were involved); and *United States v. Sutherland*, 656 F.2d 1181, 1197 (5th Cir. 1981) (rejecting contention that RICO conspiracy indictment was insufficiently specific where indictment identified pattern of racketeering activity as "a number of bribes that occurred between November 1975 and January 1980")); *United States v. Crockett*, 979 F.2d 1204, 1209-10 (7th Cir. 1992) (RICO conspiracy indictment sufficient where it identified types of violent crimes constituting pattern of racketeering, purposes for which those crimes were carried out, and time frame during which the crimes occurred).

It is true that the opening paragraph of Count Two incorporated by reference the allegations of Count One,

the substantive section 1962(c) charge, R. 12 at 39 ¶ 14, but that boilerplate did not by itself alter the nature of Count Two's conspiracy charge to demand proof that Tello committed any of the specific predicate acts set forth in Count One. On the contrary, paragraph 18 alleges that the defendants agreed that "*a* conspirator" would commit at least two predicate acts, not that every defendant (including Tello) would commit two such acts, let alone the specific acts attributed to each defendant in Count One. R. 12 at 39 ¶ 18 (emphasis ours). As we have said, neither section 1962(d) nor the case law interpreting that subsection of RICO required such proof, and so any allegation as to overt acts, including predicate acts of racketeering, that Tello may have committed in furtherance of the charged conspiracy, would constitute surplusage rather than an essential element of the charged conspiracy. Such surplus allegations thus would not support a later charge of constructive amendment based on a divergence between the acts alleged in the indictment and the acts, if any, acknowledged in the guilty plea. *See Leitchnam*, 948 F.2d at 377 ("if the indictment charges a conspiracy and lists overt acts, but it's not necessary to prove the overt acts to prove the conspiracy . . ., then jury instructions that do not demand proof of the overt acts do not impermissibly amend the indictment"); *United States v. Franco*, 874 F.2d 1136, 1143-44 (7th Cir. 1989) (district court did not constructively amend indictment by instructing jury that it need not find defendant guilty of committing overt acts (or means and methods of the conspiracy) set forth in nine extra paragraphs of indictment, as

these were unnecessary to establish defendant's guilt on conspiracy charge); *Williams*, 798 F.2d at 1032-33 (jury instructions did not constructively amend indictment by not identifying as elements of charged conspiracy the specific roles of conspirators and various overt acts committed in furtherance of charged conspiracy which were set forth in seven paragraphs of the indictment, as those allegations were unnecessary to establish defendant's guilt on conspiracy charge).

The plea agreement, which Tello and his counsel signed, in turn tracked and admitted the essential allegations of Count Two, thus establishing Tello's guilt on the conspiracy charge. Paragraph 4 of the agreement incorporated Count Two, a copy of which was attached to the agreement, R. 1473 at 1-2 ¶ 4 & Ex. A, and Paragraph 5 stated that "[t]he defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in [P]aragraph 4," *id.* at 2 ¶ 5. At the change of plea hearing, in response to questions posed by the court, Tello specifically acknowledged that he had read the allegations of Count Two and wished to plead guilty to the same. R. 1824 at 6.

It is clear, then, that Tello was pleading guilty to precisely the same racketeering conspiracy that was alleged in the indictment. There is no risk of double jeopardy, which is one of the primary evils of constructive amendment (because the alteration of the charged offense leaves the defendant exposed to a second prosecution for the crime as set forth in the indictment). *See, e.g.*, *United States v. Folks*, 236 F.3d 384, 392 (7th Cir. 2001). The indict-

ment adequately detailed the conspiracy's time frame, place, scope, participants, and intended categories of racketeering activities, and the plea agreement incorporated all of those same details. And Tello cannot claim to have been caught by surprise by the offense to which he was pleading guilty (a second evil posed by a constructive amendment, *see United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011)), as the contours of the offense were committed to writing in an agreement that both he and his counsel reviewed and signed.

We acknowledge that Paragraph 5 of the plea agreement set forth more than Tello's simple admission to the allegations set forth in Count Two of the indictment. It went on to state that "[t]he defendant further admits that he conspired with other Latin King members to commit at least two qualifying criminal act[s] in furtherance of the criminal enterprise" and that "[t]he following criminal acts were acts in furtherance of that conspiracy." R. 1473 at 2 ¶ 5. Paragraph 5 then described two crimes in which Tello had participated, including the July 2002 attack on three members of the Mexican Posse gang (Rene and Daniel Carmona and Pedro Gaona) along with the October 2004 sexual assault upon a female minor. *Id.* at 2-3 ¶ 5.

But this does not signal that Tello was pleading guilty to a different or expanded offense. For all of the reasons we have discussed, it was unnecessary for Tello to admit that he participated in two or more predicate acts of racketeering, or to any overt act in furtherance of the charged racketeering conspiracy, in order to be found

guilty on Count Two. Nonetheless, any criminal acts that Tello committed in furtherance of the conspiracy would matter for sentencing purposes, as those acts would constitute relevant conduct under the Sentencing Guidelines. U.S.S.G. § 1B1.3(a). This explains why the district court conducted an evidentiary hearing to determine Tello's culpability for a third act, the June 2002 attempted murder of Jose Espinoza. It also explains why, as anticipated in the plea agreement, Tello's offense level was adjusted upward based on the injury inflicted on Rene Carmona in the July 2002 Mexican Posse incident.

We note finally that this case is readily distinguishable from *United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004), upon which Tello relies. The defendant in *Bradley* was charged with using or carrying a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Conduct constituting a drug trafficking crime is an element of a section 924(c) offense, and where, as in *Bradley*, the indictment specifies a particular drug trafficking crime, the government must prove that the defendant used or carried a firearm in furtherance of that particular crime. 381 F.3d at 646. The parties in *Bradley* failed to appreciate that point, and during the defendant's plea colloquy the government identified a marijuana-related offense that was different from the cocaine base offense cited in the indictment, thereby modifying that element of the charged offense. In contrast to *Bradley*, the commission of a particular predicate act was not an essential element of the racketeering conspiracy offense with which Tello was charged. Conse-

quently, the plea agreement's acknowledgment of predicate acts different from those cited in the indictment did not modify the offense in any material way. The essential elements to which Tello agreed remained the same from the indictment to the plea agreement. Those elements are outlined in paragraphs 15, 17, and 18 of the indictment above. The sexual assault charge included in the plea agreement was relevant conduct committed in addition to those elements and was not necessary to convict Tello under section 1962(d).

Reviewing Tello's argument in light of the proof necessary to sustain Tello's conviction under section 1962(d), we conclude that no plain error occurred during the change of plea process. Both the indictment and the plea agreement contained sufficient information for Tello to knowingly and voluntarily plead guilty, and the two documents were wholly consistent with respect to the essential elements of racketeering conspiracy. Tello admitted to the elements of RICO conspiracy. Consequently, any disparity between the predicate acts of racketeering attributed to him in Count One of the indictment and the acts in furtherance of the conspiracy that he acknowledged in the plea agreement did not impact the validity of Tello's guilty plea and conviction. None of those acts were essential to Tello's guilt.

B.  Hill

This is Hill's second appeal and, like the first, it focuses on his sentence. Hill contends that after this court in the prior appeal sustained his challenge to the

finding that he was a career offender, the district court was presented with a straightforward task on remand: to recalculate his offense level without the career offender designation, to determine whether his reckless endangerment conviction was properly considered as part of the RICO conspiracy to which he pleaded guilty in this case rather than as a distinct offense that was part of his prior criminal history, and then to re-sentence him once those two matters were addressed. Instead, the court allowed the government to propose an altogether different enhancement for being an accessory after the fact to a rival gang member's murder, *see* U.S.S.G. § 2X3.1, notwithstanding the fact that this enhancement had not been raised previously. That enhancement, which the district court found applicable, boosted Hill's offense level nearly to what it had been when Hill was first deemed a career offender. Hill contends that the government had waived any reliance on this enhancement by not proposing it sooner, and that the district court exceeded the scope of our mandate by entertaining the government's argument on remand. We agree.[3]

Nothing stood in the way of the government raising the accessory-after-the-fact enhancement at the time of Hill's first sentencing. Hill's connection with the gun

---

[3] Hill additionally contends that the record does not support imposition of the accessory enhancement. But because we conclude that the court should not have considered this enhancement, we need not address the merits of the enhancement in this case.

used to murder the rival gang member was known at that time; indeed, the relevant facts were recited in Hill's plea agreement. R. 1130 at 3-4 (noting, *inter alia*, that the revolver used in murder of rival gang member was among four firearms discovered in the search of the residence that Hill used, that Hill was known to store firearms used by fellow gang members and admitted as much, and that Hill acknowledged knowing that the other three firearms were present). As we have noted, the plea agreement also stated that the parties had "discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense . . .," *id.* at 6 ¶ 12. Nowhere in the plea agreement, however, was there any mention that the accessory guideline might apply to Hill based on the presence of the revolver in his residence.

The government contends that there was no need to raise the accessory guideline at the time of Hill's original sentencing, because the district court's determination that Hill was a career offender rendered other enhancements irrelevant. Yet, it was not a foregone conclusion that the court would find that Hill was a career offender: the plea agreement acknowledged only that Hill *might* qualify as a career offender, *id.* at 8 ¶ 18, and Hill himself argued to the court—correctly, as it turned out—that his criminal history did not meet the criteria for career-offender status, R. 1235 at 5-7; R. 1250. The government surely anticipated the possibility that the district court might agree with Hill that the career offender guideline did not apply, as well as the possibility that even if the district court deemed Hill a

career offender, this court might see things differently, as it ultimately did in the prior appeal. The government thus had every reason to raise other potentially applicable enhancements to Hill's offense level.

In short, there was no legitimate reason for the government to ignore the accessory-after-the-fact guideline at the time of Hill's first sentencing, and its failure to do so resulted in a waiver of its arguments as to that guideline. The prior appeal focused solely on Hill's criminal history (Chapter 4 of the Guidelines) and in particular on whether he qualified as a career offender under section 4B1.1. Our resolution of that issue in no way implicated the underlying offense conduct (Chapter 2 of the Guidelines), which of course included Hill's status as an accessory after the fact under section 2X3.1. When we remanded the case so that Hill could be resentenced, we instructed the court to consider whether Hill's conviction for reckless endangerment encompassed conduct that should be viewed as in furtherance of the conspiracy to which he pled guilty in this case rather than as an aspect of his prior criminal history; but we otherwise left the Guidelines calculations undisturbed. Nothing in our decision invited the parties or the court to start from scratch and explore entirely new enhancements. *See United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("If the opinion identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error.").

When it permitted the government to make a Guidelines argument that it had long since waived, the

district court therefore exceeded the scope of our
remand, as we likewise concluded in *United States v.
Wilson*, 131 F.3d 1250, 1253 (7th Cir. 1997). There, we
had ordered that Wilson be resentenced upon con-
cluding that the district court had arrived at an
erroneous offense level as a result of its decision not to
group together his mail fraud and money laundering
offenses. *See United States v. Wilson*, 98 F.3d 281 (7th Cir.
1996). On remand, the court grouped the two sets of
convictions as instructed, but it also accepted the gov-
ernment's argument, made for the first time on
remand, that the mail fraud should be treated as
relevant conduct vis-à-vis the money laundering
pursuant to U.S.S.G. § 1B1.3(a)(2). The relevant conduct
determination had the effect of increasing Wilson's
offense level and sentencing range; and the sentence
that the court imposed on remand exceeded the
original sentence by twenty months. Wilson appealed a
second time, and we concluded that the court had
erred when it increased Wilson's offense level based on
an argument that the government had long since waived:

> That offense level was erroneous . . . because the
> district court exceeded the scope of our remand
> in reassessing the question of relevant conduct. In
> advance of our first decision in this case, the govern-
> ment had never asserted that Wilson's acts of mail
> fraud qualified as relevant conduct for purposes of
> his money laundering conviction under section 1B1.3.
> The government, in other words, never suggested
> that the mail fraud and money laundering were
> related as relevant conduct either under subsection

(a)(1) or (a)(2) of the relevant conduct guideline. In the absence of such an argument, the district court accepted the PSR's recommendation that the mail fraud did not qualify as relevant conduct with respect to the money laundering. And having never advocated a relevant conduct finding below, the government did not cross-appeal on that issue once Wilson challenged the grouping determination in this court. The government also never suggested in briefing the first appeal that a decision in Wilson's favor on the grouping issue would serve to reopen the matter of relevant conduct. For all intents and purposes, then, the relevant conduct issue had been finally determined by the time this court considered Wilson's first appeal, and nothing we could say about grouping would serve to reopen that issue.

131 F.3d at 1253-54; *see also United States v. Sutton*, 582 F.3d 781, 786 (7th Cir. 2009); *cf. United States v. White*, 406 F.3d 827, 832-33 & n.2 (7th Cir. 2005) (where district court found at first sentencing that defendant had obstructed justice but did not apply obstruction enhancement because underlying conduct overlapped with conduct supporting murder cross-reference, district court was free to impose enhancement on remand once murder cross-reference was held erroneous on appeal, as enhancement was based on existing record and government was not afforded opportunity to present new evidence). What we said in *Wilson* is just as true here: Having failed to argue in the first instance that Hill was an accessory after the fact to a rival gang member's murder, that subject was closed when we ordered that Hill be resentenced.

The district court therefore erred in applying the accessory guideline on remand. Hill must again be resentenced, this time without the section 2X3.1 enhancement.

### III.

We AFFIRM Tello's conviction. No plain error occurred with respect to the plea agreement's identification of predicate acts of racketeering that were different from the acts cited in the indictment. We VACATE Hill's sentence and REMAND for resentencing based on our conclusion that the district court exceeded the scope of our remand in permitting the government to make an argument for an enhancement to the offense level that it had waived by not raising previously.